HAWTHORNE, Justice.
 

 In this case, Dr. Vaughan C. Sanford instituted habeas corpus proceedings for the care and custody of his minor child, Sandra Gale Sanford. After trial in the lower court, there was judgment on July 30, 1945, recalling and setting aside a judgment signed on January 17, 1941, insofar as that judgment gave the custody of said minor to the mother; maintaining and perpetuating the writ of habeas corpus, and awarding the care, custody, and control of the child to the father, with the privilege granted to the mother, Mrs. Mildred Dykes Green, to visit said child at all proper and reasonable times and places.
 

 ' On application of Mrs. Green, this court granted a writ of certiorari, and the matter is now before us for review under our supervisory jurisdiction.
 

 Relator, Mildred Dykes (now Mrs. Green), and respondent, Dr. Vaughan C. Sanford, were married on July 11, 1939, and established their matrimonial domicile at Pineville, in the Parish of Rapides. Early in September, 1940, the wife left the matrimonial domicile and went to the home of her mother and step-father, who resided near the City of Alexandria, and never thereafter returned to live with her husband. On September 19, 1940, a daughter, Sandra Gale Sanford, was bom of this marriage.
 

 On November 2, 1940, when the child, Sandra Gale Sanford, was about five or six
 
 *1076
 
 weeks old, the mother instituted a suit for separation from, bed and board, alleging cruel treatment. Dr. Sanford answered this suit and reconvened, alleging cruel treatment also and praying that a judgment of separation from bed and board be granted to him. After trial, the lower court on January 17, 1941, rendered judgment in favor of Dr. Sanford, granting ttntohim a separation from bed and board, and granting unto the wife alimony in the sum of $100 per month and also giving to her the care and custody of the child, Sandra Gale Sanford, with the privilege granted to the father to visit the child at all reasonable times and places.
 

 A little over two months after the judgment of separation was rendered, the husband filed a rule against his wife to show cause why the alimony as fixed in said judgment should not be reduced to $10 per month. After trial of this rule, the district court on April 15, 1941, rendered judgment reducing the alimony from $100 to $60 per month. From this judgment Dr. Sanford appealed suspensively to this court, which appeal is still pending here.
 

 More than one year having elapsed and no reconciliation having taken place between the parties, the husband instituted suit for an absolute divorce, which was granted on April 10, 1942. In that proceeding he did not pray for the custody of his minor child, and the judgment rendered therein was silent on this subject.
 

 In November, 1943, the mother married one James Green, who was then a corporal in the Army of the United States but who had been promoted to the rank of sergeant at the time the habeas corpus proceedings were tried in the court below. On or about January 1, 1945, the mother accompanied her husband, James Green, to Fort Smith, Arkansas, to which place he had been transferred by Army authorities, and took the child with her.
 

 In July of 1945, relator, accompanied by the child, returned to the City of Alexandria for a visit with her parents, and on July
 
 16
 
 of that year Dr. Sanford instituted habeas corpus proceedings for the care and custody of his minor daughter, in which proceedings ■ the lower court rendered judgment awarding unto Dr. Sanford the care and custody of the child and amended its judgment which had been rendered in favor of the husband in the suit for separation from bed and board only insofar as it gave the custody of said minor to the mother. From this judgment Mrs. Mildred Dykes Green applied to this court for writs of certiorari, prohibition, and mandamus.
 

 As authority for granting the custody of the minor child, Sandra Gale Sanford, to the father in this case, the judge of the lower court, in written reasons, cites Article 157 of the Revised Civil Code, as amended, which provides that: “In all cases of separation and of divorce the children shall be placed under the care of the party who shall have obtained the separation or divorce unless the judge shall, for the greater advantage of the children, order that some or all of them shall be entrusted to the care of- the other party. * * * ”
 

 
 *1078
 
 The district judge found that it was not to the greater advantage of the child that her custody be given to the mother, for the reason that, since the mother testified that she intended to accompany her soldier husband from place to place, it would be necessary for the father to travel to where the mother, her husband, and the child were residing at the particular time; while, on the other hand, if the child were in the custody of the father, the mother could visit her three or four times a year, and the child would be near her relatives, both paternal and maternal, and that such a home, with blood relatives, would offer superior advantages to a home in which an alien step-father lives, whose feelings must be considered at all times by his wife.
 

 The lower court further pointed out that the father bears an excellent reputation and occupies a comfortable home over which his mother presides, and that under these circumstances it is impossible for the child’s own mother to give her greater advantages than she would enjoy in her father’s home.
 

 The record corroborates the statements of the trial judge with reference to the child’s father’s reputation and ability to provide for her, but we do not agree that it would be to the greater advantage of the child for him to have her care and custody.
 

 Sandra Gale Sanford, a girl five years of age, has been in the care and custody of her mother since birth, both of them residing in the home of relator’s parents. When the child was approximately two months old, the mother secured employment with the State Public Welfare Department, and, after working there for about two years, was employed by the United States Employment Service until she departed from Alexandria with her soldier husband on or about January 1, 1945. She has not been employed since that date, and states that it is her intention to devote her entire time to the child. While relator was working in Alexandria, her mother looked after the child.
 

 Relator’s husband, Sergeant Green, owns a new brick home, completely furnished, in a good residential section in the City of Memphis, where she intends to make her home with her husband and her daughter when Sergeant Green is discharged from 'the Army. At the time of the trial in the lower court, they were residing in a five-room apartment in Fort Smith, Arkansas, with good neighbors, near a church where the child attended Sunday school. Mrs. Green testified that it was her intention to place the child in kindergarten in the fall of 1945. She herself has a degree from Louisiana State University and has one year’s work toward a Master’s degree. Her husband’s income is approximately $250 a month, which includes his salary as a sergeant in the Army and revenue from rental property in Memphis. He has also made an allotment of $30 per month in favor of the child.
 

 It is true that from time to time Dr. Sanford has contributed certain sums of money to the support of the child. However, since the separation, the mother has provided her daughter’s principal support
 
 *1080
 
 from her own earnings. In addition, she has an educational policy in the principal sum of $2,500 in favor of the child and has accumulated war bonds, all of which she expects to apply on a college education for the child.
 

 There is no intimation or suggestion anywhere in the record that the mother is morally unfit or disqualified in any way by her conduct or character to-have custody of the child. On the contrary, a careful reading of the entire record reflects that she is a woman of refinement, possessing a good education, strength of character, determination, and common sense, and that she is in a position to care and provide adequately for her daughter.
 

 ■The case of Black v. Black, 205 La. 861, 18 So.2d 321, 323, presented a situation similar to that existing in this case, for there, as here, both parents were well qualified to care for the children. And the court there concluded that there was no reason why the custody of the children should not be given to the mother, especially as the children were both girls of tender age, needing a mother’s constant care and attention. In that case we said:
 

 “The paramount consideration in determining to whom the custody of a child should be granted after a divorce is the welfare and best interest of the child. This is the rule laid down by Article 157 of the Civil Code, as amended, which has been followed consistently by this Court in its decisions.
 

 “The age and sex of the child are important considerations, and the preference is always given to the mother who is not shown to be unsuitable therefor in awarding custody of children, especially girls. Brewton v. Brewton, 159 La. 251, 105 So. 307; Newson v. Newson, 176 La. 694, 146 So. 472; Kammer v. Reed, 176 La. 1091, 147, So. 357; Higginbotham v. Loften [Lofton], 183 La. 489, 164 So. 255; Brupbacher v. Brupbacher, 192 La. 219, 187 So. 555; Hattier v. Martinez, 195 La. 473, 197 So. 146.”
 

 In the recent case of White v. Broussard, 206 La. 25, 18 So.2d 641, 642, this court, after discussing the provision of Article 157 of the Revised Civil Code, as amended, said:
 

 “In applying this provision, the courts have consistently held that the right of the mother to the custody of the minor child is paramount to that of the father, unless, in his discretion, the trial judge concludes that it is for the greater advantage of the child that it be entrusted to the care of the father, which conclusion is, of course, subject to review by us. Brewton v. Brewton, 159 La. 251, 105 So. 307; O’Dwyer v. Natal, 173 La. 1075, 139 So. 486; Higginbotham v. Lofton, 183 La. 489, 164 So. 255; and the very recent case of Black v. Black [205 La. 861], 18 So.2d 321; and Matheny v. Matheny [205 La. 869], 18 So.2d 324, and the cases therein cited.
 

 “We do not know what prompted the trial judge to award the custody of this child to the plaintiff, for we do not have his appreciation, of the evidence in written reasons for judgment. A careful study
 
 *1082
 
 and analysis of all of the cases on this subject, however, reveals that this court has consistently awarded the custody of a minor child to the mother unless she is found to be morally unfit or unless, as has been the occasion in very exceptional cases, the mother is incapable of taking care of the child.”
 

 For the reasons assigned, the judgment of the lower court awarding the custody of the minor child, Sandra Gale Sanford, to the father is reversed, annulled, and set aside, and it is ordered that the judgment of January 17, 1941, insofar as it gave the custody of said minor to the mother, be, and the same is hereby, reinstated; respondent, Dr. Vaughan C. Sanford, to pay all costs of these proceedings.