**65 So.2d 321**

### WILMOT v. WILMOT.

Nos. 40264, 40476.

March 23, 1953.

Rehearing Denied April 27, 1953.

Richard B. Montgomery, Jr., St. Clair Adams, Jr., Charles J. Rivet, New Orleans, for appellant.

Wisdom & Stone, John Minor Wisdom, Saul Stone, Paul O. H. Pigman, Edward B. Benjamin, Jr., New Orleans, for appellee.

LE BLANC, Justice.

Two separate rules growing out of the same proceeding were consolidated for trial purposes in the Court below and also on appeal before this Court. One, a rule taken in the original suit for separation between the parties, involves the matter of custody of two minor children and the other, taken in a separate proceeding concerns the question of alimony.

The main proceeding originated as a suit for separation from bed and board instituted by the plaintiff, Willis G. Wilmot, against his wife Rachel Buntin Wilmot, on November 30, 1946. His demand was based on alleged cruel treatment. On December 26, 1946, the parties agreed to a judgment which was rendered granting the temporary care and custody of the children, both girls, one aged about seven and one-half years at the time and the other almost four, to the mother, Mrs. Wilmot. This judgment was clearly one of divided custody as the father was given the right to have possession of the children on three days of each week during certain stated hours.

On March 11, 1947, Mrs. Wilmot filed her answer to her husband's suit for separation in which she denied all the charges made in his petition and reconvened, setting forth acts of cruel treatment on his part, and prayed for judgment for separation in her favor. By agreement she was permitted later to file a supplemental answer and reconventional demand in which she presented an alternative allegation of abandonment by her husband and a corresponding alternative prayer for judgment on that ground. By a judgment rendered on March

25, 1947, and signed on March 31, 1947, it appears that her husband filed an answer to the reconventional demand of Mrs. Wilmot in which he admitted the abandonment she had alleged and accordingly a decree was entered granting her a separation a mensa et thoro, dissolving the community of acquets and gains existing between them and awarding her the permanent care and custody of the two children subject to many detailed rights of temporary possession on the part of the father as well as other rights with regard to their schooling and their place of residence in the city of New Orleans. Alimony to be paid by the father was fixed at $825 per month, of which $400 was for Mrs. Wilmot and $425 for support of the children.

By judgment rendered on June 7, 1948, and signed on June 11, 1948, Mrs. Wilmot was granted an absolute divorce from her husband and was again given the permanent care and custody of the children with certain rights again reserved to Mr. Wilmot regarding their possession at certain stipulated times and also regarding their schooling and residence.

The arrangement by which the parties were no doubt attempting to meet the problem of custody, with the approval of the Court by way of the judgments that were rendered, only served to make a bad situation worse. Mrs. Wilmot had lived in Tennessee near the city of Nashville, before she married Mr. Wilmot and her mother still lived in the family home. She claims that it was extremely difficult for her to obtain suitable living accomodations for herself and the children in New Orleans and found it rather easy to turn her mind to the maternal home where she might find proper refuge. In this she apparently was encouraged by her mother who not only received her and the children but offered them to live with her and moreover assisted her in financing the purchase of a summer cottage at Hot Springs, Virginia. Little wonder then that on February 3, 1950, she filed the present rule in this proceeding in which she set out the facts which have just been recited, and on suggesting all these matters to the Court as well as the fact that Nashville offered fine schools where she could have the children educated within the restrictions of her present alimony, she asked that their father be ruled into Court to show cause why she should not be permitted to remove her residence and domicile to Nashville, Tennessee and there rear and educate her two minor children, subject to their father's right to have them with him during a certain part of the summer when he would be on his vacation.

The defendant in rule, in response thereto, filed an exception of no right or cause of action and in the alternative he answered denying all the allegations it contained and then averred affirmatively that the mover was not a proper person to be entrusted with the care and custody of the children because he has been informed by reputable psychiatrists that she appears to be in such

a neurotic or psychotic state that she should be examined in order to determine whether it is safe and for the best interests of the children to remove them from the Court's jurisdiction and from their father's influence. He also averred that she is so set in her frivolous habits and her determination to pursue her own social pleasures and ambitions that it would be unreasonable to expect her after her removal from this State to give the children that care and attention they require when he will be in no position to watch over them and safeguard their welfare.

After a prolonged trial of the rule in the Court below there was judgment in favor of mover and against the defendant amending the previous custody judgment so as to provide that Mrs. Wilmot is given the right to remove herself and the two children to Nashville, Tennessee, and the father to have the right to have the children with him from July 15 to September 1 of each year beginning with the year 1951 and the further right of visitation at reasonable times and under reasonable circumstances. This is the first of the two rules which is before this Court on appeal by the defendant.

On appeal, defendant in rule again urges his exception of no cause or right of action. It is based on the proposition that the rule filed by mover does not allege that any change in circumstances affecting the welfare of the children has occurred since the consent decree regarding custody was rendered, nor that defendant has forfeited his natural right of access to his children by any conduct subsequent to or prior to the consent decree. He stresses the point that, to the contrary, the motion discloses her sole purpose to be to gratify her personal desires without regard to the welfare of the children or to any of his rights.

■■ Reference to the allegations made in the motion indicates that there has been some change in circumstances which would justify the mover to ask the Court permission for her removal and the removal of the children to the State of Tennessee. She alleges that since the rendition of the consent decree she has been unable to locate proper housing accomodations in the city of New Orleans within the financial limitations of the alimony which she receives and in view of the offer of her mother to have her and the children live with her in the spacious home her mother owns in that State, and the further fact that residence there would afford the children splendid schools for their education it would be for their better interest and general welfare. She also alleges that she is willing that the children spend a certain part of the summer with their father. Taking these allegations to be true we think that she has disclosed a cause of action inasmuch as in matters of custody in cases of this kind, it is primarily the best interests and welfare of the children with which the Court is concerned. Moreover, the various questions raised under the exception seem to be

matters which address themselves to the merits of the case as they would have to be determined largely on the facts that are presented. We find no merit in the exception and now proceed to a discussion on the merits of the rule on which there would seem to be two important points to be considered and determined.

The first arises under the demands of the defendant that he be awarded the custody of the children because, as he alleges, the plaintiff in rule is not the proper person to have and retain their custody. The second point, assuming that the defendant in rule has failed to satisfy the court that the mother of these children is now incapable of taking care of them and properly providing for them, has the Court the right to grant her the permission which she requests to move from the State of Louisiana with the children and to maintain her custody over them in the State of Tennessee.

Taking up these points in the order in which they were mentioned, it must be conceded that in Louisiana the right of the mother to the custody of the minor children of the marriage is paramount to that of the father unless she is found to be morally unfit or incapable of taking care of the children.

Article 157 of the LSA–Civil Code by its own terms grants the custody of the children to the party who obtains the separation or divorce, unless the judge shall, for the greater advantage of the children, order that they be entrusted to the other party. In this case it was not only plaintiff in rule who obtained the divorce but by agreement with her husband the decree of custody was in her favor. It would seem, therefore, that not only the Court but the husband also considered that it was for the greater advantage for the children, at that time, that their mother should be entrusted with their care.

The jurisprudence of this State, especially the more recent, leaves no doubt that the mother is always preferred unless, as it is stated, she is shown to be morally unfit or incapable of taking care of the children. The trial judge in this case reviewed that jurisprudence. Significantly this Court, in standing on that policy, reversed decisions of the lower Court in several cases which had awarded custody to the father and awarded it to the mother. Notably among these cases are all of the most recent including Ane v. Ane, 220 La. 345, 56 So.2d 570, in which the situation presented with regard to the unsuitableness of the wife was not much unlike the one in this case; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456; Willis v. Willis, 209 La. 205, 24 So.2d 378 and Sanford v. Sanford, 208 La. 1073, 24 So.2d 145.

Like in Ane v. Ane, supra, there is no contention made by the defendant in rule that the mother in this case is morally unfit to take care of the children. There is no allegation nor anything else in the whole record to intimate that she is, or has been

guilty of any moral turpitude. The only question is with respect to capability or incapability of properly taking care of the children and providing for their welfare and on this point, as the trial judge aptly expressed it, the defendant pitched his whole case of incapability on the hope or expectation of proving that the plaintiff in rule had some form of psychosis which rendered her unfit to discharge such a grave responsibility.

In cases of this character, especially of this one, when such an issue is presented, the Court is put to the task of listening to and evaluating the testimony of those experts in the particular field of medicine dealing with psychiatry. Several such experts testified in this case and, as often occurs, they entertained some differences of opinion, after their examinations, concerning Mrs. Wilmot's condition as it related to their particular field. The trial judge seems to have been very patient in entertaining the testimony of these experts and he carefully analyzed most of it in his written reasons for judgment. In announcing his conclusions he stated that the evidence utterly failed to support any allegations that plaintiff had a psychosis: "There is no doubt" he states "that the stress and strain caused by these numerous examinations by psychiatrists, when Mrs. Wilmot knew she was being charged with having a psychosis and being insane, strained to the breaking point her nerves, and caused her, naturally, to be under some tension. It

could not be otherwise." Further, we quote him as stating "My appreciation of the evidence adduced by defendant's psychiatrists, and particularly Dr. Heath, is that Mrs. Wilmot is not suffering from a psychosis, but that there is a chance that she could develop one. As a matter of fact, anyone could develop a psychosis, as the doctors have so testified. But Dr. Heath was too general and he preferred to give his evidence in that manner".

Certainly after reading this entire record and giving this particular testimony careful consideration, we cannot disagree with this conclusion of the trial judge. The most we think that Dr. Heath would state with any degree of definiteness was that he thought that there would be a "risk involved" in letting Mrs. Wilmot have the custody of these children but what the risk was, he did not state. There is no doubt, in our opinion, that the plaintiff is an emotional person and was perhaps highly emotional by reason of the strain and the tension growing out of all of the circumstances of this litigation but there is nothing to indicate other than that she has a strong love for her children, is devoted to them and means to do the very best she can for them in the way of their moral rearing and the education which they are entitled to. She may experience some difficulty in handling matters from a financial standpoint as she readily admits she has little knowledge of business affairs, but that is a matter which

should not deprive her of their custody if she is otherwise entitled to it.

The next and perhaps the most important issue that arises is the one regarding her request for permission to remove herself and the children to another State.

■ On this point also the trial judge gave the case most unusual attention. He not only considered the testimony on the trial of this rule but, as he says, the whole history of the case as well as the atmosphere and feeling of distrust which had existed between these parents since the incipiency of this proceeding in November 1946. It strikes us also that the various provisions which were made in the consent decrees concerning the custody of the children, although properly intended, were necessarily bound to lead to a situation where it would be impossible for them to have the practical and beneficent results that were expected. As a matter of fact they were nothing more than decrees of divided custody and possession which are not favored by this Court. In Pierce v. Pierce, 213 La. 475, 35 So.2d 22, 23, this Court stated:

"Obviously, if an impressionable twelve year old boy is with his mother at times, when he must go to school and be disciplined, and with his father and stepmother during his periods of recreation over each weekend, a conflict of emotions and comparisons is bound to develop which ultimately redounds to the detriment of the child.

"Moreover, the ruling below seems to overlook the fact that appellant is the legal custodian of the child. While Article 157 of the Civil Code, as amended by Act No. 74 of 1924, does not have the effect of depriving the father of the right to give expression to his natural parental affection by seeing and visiting his child (see Jacquet v. Disimone, 175 La. 617, 143 So. 710 and Shipp v. Shipp, 183 La. 1025, 165 So. 189), this does not authorize the judge to give the father exclusive possession of the child for two nights and over one whole day of each week as such an order is, in legal effect, a grant of part time custody."

In the present case, the terms of the decree indicate that although legal custody was awarded to the mother, the father nevertheless was given part time custody and granted the right to maintain much control and dominion over the children especially with regard to their education and their place of residence as long as they lived in New Orleans.

The alternate period at which time either of the parents were to have possession of the children made it an almost impracticable situation as far as the children themselves were concerned and one which could certainly lead to that conflict of emotions referred to in the Pierce case and was not conducive to their best interest and welfare. The trial judge refers to this as the "shuttling" of the children which in fact

was what it was and he came to the conclusion that only the removal from the atmosphere in which they were forced to live would permit them, as well as the parents, to pursue a normal course of living free from strife, strain and stress. "A complete change is the only answer to the problem," was his concluding statement on this point.

The next important consideration before us is whether the Court had the legal right to permit the plaintiff to leave the jurisdiction of the Court with her children and thereby divest the Louisiana courts of any further jurisdiction in the matter of their custody.

■ These questions were, in a manner, presented to this Court in the case of Wheeler v. Wheeler, 184 La. 689, 167 So. 191, 193, and although, as contended by counsel for the defendant, the situation was different inasmuch as the minor, whose custody had been awarded to the father who had removed to the State of Kansas, remained in the city of Shreveport, we believe the statements contained in the opinion and the decision itself give support to the ruling that has to be made in this case. The contention made is that the minor in that case had remained within the jurisdiction of the Louisiana court, was a ward of the State of Louisiana and only the courts of this State could act judicially in relation to its welfare. But we do not understand that the Court decided the question of jurisdiction on the basis of the child's presence in Loui-

siana. The decision rested on the proposition that questions of custody of children and of alimony are incidental demands growing out of separation from bed and board suits and that the Court having acquired jurisdiction of res i. e., the marital status of the parties litigant, it retained it over both parties in all matters incidental thereto. Specifically the Court stated, with reference to the exception to the jurisdiction of the Court, that "it must be borne in mind that this is a separation from bed and board proceeding, over which the district court is conceded to have had jurisdiction, when the case was instituted originally. It is undisputed that the children at all times remained in Shreveport, or within the jurisdiction of the court. The sole question is whether or not the father, having established his domicile in Kansas, divested the court of jurisdiction over him in a separation from bed and board proceeding, after obtaining a judgment of separation from bed and board against his wife, and the custody of the child." Very significantly also the Court, at another point, stated: "There is no doubt that, since the father was granted the custody of his daughter Kitty Ree, he might, at any time he chose, take the child to Kansas with him, and thereby render nil relator's rule for the custody of the little girl, if it is determined that the court has jurisdiction."

■ There is an abundance of authority on this issue in other jurisdictions. In 154 A.L.R. 552 (1945), we find a thorough

discussion and annotation of the matter and it is stated therein that the result of the decisions is that where the custodian has good reasons for living in another State and such course is consistent with the welfare of the children, the court will permit the removal. The general rule is that the court will be governed primarily by the welfare and best interests of the children in determining whether or not to grant the permission. This naturally includes such factors as scandal caused by the proceedings and its harmful effects upon the children while they remain in the locale, the local friction between the parents with its resulting effects and their repeated controversies over their custody. While the reasons given for the removal in this case may not have been all compelling, they were reasonable, and in the opinion of the trial judge it was for the best interest of the children and of all parties concerned that he grant the permission for their removal. It is a matter in which he was vested with a large amount of discretion. He exercised it in the manner which he deemed best and we find no reason to disturb his ruling.

 The decree of custody recognized the father's right to possession of the children during certain parts of the summer season and also his right to reasonable visitation. The apprehension regarding the difficulty which the court may experience in determining the matter of his exercise of the rights granted to him would

seem to be unfounded in this case since the plaintiff has consented to the jurisdiction of the court. But if she had not, it would seem that Act No. 296 of 1910 (now LSA–R.S. 9:303) would give him the right to bring her within the jurisdiction of the Louisiana court by constructive service. In the case of Wheeler v. Wheeler, supra, the Court refered to the case of Lukianoff v. Lukianoff, 166 La. 219, 116 So. 890 and quoted from it as follows: "The later acts, Act No. 25 of 1898 [LSA–R.S. 9:302] and Act No. 296 of 1910 [LSA–R.S. 9:303], eliminate any discussion or doubt as to the question of the jurisdiction of the court, rendering the decree of separation, to grant a judgment of absolute divorce based upon such decree, and as to the right of a *plaintiff to resort to constructive service where the defendant is an absentee*. It is well established as a general rule that, where the jurisdiction of the person or of the res has once attached, it is not defeated by a removal of the person or the res beyond the jurisdiction of the court. 15 C.J. 824; 7 R.C.L. 1045; United States v. Dawson, 15 How. 467, 14 L.Ed. 775; Lofton v. Collins, 117 Ga. 434, 43 S.E. 708, 61 L.R.A. 150; McSherry v. McSherry, 113 Md. 395, 77 A. 653, 140 Am.St.Rep. 428. We are of the opinion that the district court of Caddo Parish was vested with jurisdiction to grant plaintiff a divorce a vinculo matrimonii." As we have already seen that questions of custody and of alimony are incidental demands growing out of suits of this nature,

certainly the same rule with regard to jurisdiction over those matters must prevail.

We conclude therefore that a judgment of the district court on the rule for custody and for permission of the custodian to remove herself and the children to the State of Tennessee is correct and it will accordingly be affirmed.

Taking up now the appeal from the judgment on the rule concerning alimony, we find that on October 17, 1950, the plaintiff in that rule, Willis G. Wilmot, instituted a proceeding to be relieved from all payments under the consent decrees of March 31, 1947 and June 11, 1948, under which he had to pay $400 per month to his divorced wife for her support and $425 for the support of the children. In the alternative he sought to have the court determine and fix the amount of contribution, if any, he should make for the support of his children while out of the State. In answer to this rule, the defendant, Mrs. Wilmot, appeared and averred that the alimony agreed upon and provided for in the said decrees was predicated solely upon plaintiff's income, his ability to pay and the needs of his dependents at that time and that because his income is now greater than it was in March 1947 and her living expenses have so increased she should be paid more in the way of alimony than she is now receiving and she therefore asked that the amount be increased to the sum of $1,200 per month, $600 for her support and $600 for the support of the minor children. After trial of this rule, the

district judge rendered judgment holding that the amounts of alimony agreed upon and decreed in the judgment heretofore rendered were fair and reasonable, and should not be changed and accordingly he dismissed and discharged the rule. This appeal is by plaintiff in rule. Defendant did not appeal nor did she answer the appeal that was taken.

The contention of the appellant on this rule is that Mrs. Wilmot and the children are not entitled to alimony because they have voluntarily left the State of Louisiana with the intention of permanently residing in the State of Tennessee. On this point counsel for the appellant cited the case of Land v. Land, 183 La. 588, 164 So. 599, and also Section 498–A of the Restatement of Conflict of Laws which latter authority, it is stated, is in accord with the holding in the Land case.

The ruling in the Land case is to the effect that when sued for a divorce by the husband under the second paragraph of Article 142 of the LSA–Civil Code, the defendant nonresident wife is not entitled to the remedies or conservatory measures contained in the general law, which includes Article 148 of the LSA–Civil Code, providing for alimony pendente lite. We do not think the ruling in that case has any bearing on the issue as it is presented in the case now before us.

The section from the Re-statement of Conflicts of Laws is evidently an errone-

ous citation as section 498–A of the Re-statement has no bearing whatever on the question here presented. It may be that counsel intended to cite section 457 of the Re-statement which reads as follows:

"A state has legislative jurisdiction to impose upon one person a duty to support another if

"(a) the person to be supported is domiciled within the state and the person to support is subject to the jurisdiction of the state, or

"(b) *the person to support is domiciled within the state although the person to be supported is not subject to the jurisdiction of the state,* or

"(c) both parties are subject to the jurisdiction of the state, though neither is domiciled there." (Emphasis supplied.)

A mere reading of this provision would indicate that it is section 457(b) and not Section 457(a) which is the pertinent provision and would seem to impose the obligation to support in this very case.

Counsel of appellant also urged that the mother of the children in this case has become their tutrix and that having emigrated to another jurisdiction she has ipso facto forfeited her tutorship. The authorities cited by counsel on this point no doubt support their statement but they relate, as we view them, strictly to mat-ters of tutorship. In such matters the tutor is charged with the administration of the property of the minors, under orders of the court. Here, we have merely a custodial proceeding where no property rights of the minors are involved and the only funds to be handled by the custodian is the amount of cash alimony which the court has decreed in their favor and which is to be expended for their support and their education.

Counsel for appellant further urge that if made to apply to the payment of alimony in this case, Article 160 of the LSA–Civil Code would be unconstitutional inasmuch as it would be the coercing of a private person to pay a gratuity or pension to another private person where there no longer remains any obligation to support; that it would be nothing less than a legislative attempt to recognize the taking of the private property of one person for the private use of another and that is not due process of law. Interesting as this point may seem, it was not raised in the pleadings until the lower Court had dismissed the rule and refused the plaintiff a suspensive appeal, and then only in a motion for a new trial. The lower court did not pass on it and as it is urged and argued for the first time before this Court, it cannot be considered.

This leaves only the issue as to the amount of alimony. The lower court found that $400 a month for the support of

the divorced wife and $425 a month for the support of the two children, as originally agreed upon by the parties and decreed by the court in the judgment of divorce, was fair and reasonable and should not be changed. At the time the motion concerning alimony was tried, Mr. Wilmot was worth in excess of $300,000 and his income ranged between $30,000 and $37,000—$12,600 salary and the balance dividends and interest from stocks and bonds. As concerns the award of $425 a month for the support of the two children, he has, in the alternative, asked that it be reduced to $100 a month for each child. His obligation to support, maintain and educate the children is fixed by Article 227, LSA–C.C. and must be granted according to the provisions of Article 230 et seq., in proportion to the wants of the persons requiring it, and the circumstances of these who are to pay it. Obviously, the wants of appellant's two children are greater than those of the children of parents of less means. They attend private schools, receive dancing, horseback riding, and swimming lessons, and wear expensive clothes. This would be their custom of living under the father's custody. The divorce and custody of the children in the mother should not be allowed to diminish these advantages. We find that $425 a month for the support of the children is little enough in view of father's ability to pay.

As concerns the award of $400 a month for the support of the wife, appellant resists paying for any support whatsoever. As the right of this State to fix the duty to support his divorced wife upon the husband under proper circumstances has already been determined, we must look at the circumstances. Article 160 of the LSA–C.C. provides for alimony to the divorced wife who has not sufficient means for her maintenance, to be paid out of the property and earnings of her divorced husband. The article further states that the amount thereof shall not exceed one-third of the husband's income. The jurisprudence concerning this alimony, in the nature of a pension, is to the effect that the amount is left largely to the discretion of the trial judge. In Matheny v. Matheny, 205 La. 869, 18 So.2d 324, 326, this Court stated:

"The test is not the amount of money which it requires to support the divorced wife in the manner in which she was accustomed to live, but what sum will provide her with sufficient means for her maintenance. Player v. Player, 162 La. 229, 230, 110 So. 332; and Fortier v. Gelpi, 195 La. 449, 197 So. 138."

Regarding Mrs. Wilmot's means for her maintenance, the record shows that she has no income other than the alimony awarded her. It is true that since the divorce she

has purchased a vacation home in Virginia for $28,000 but it is also true that she has no equity in this home. The down payment of $11,000 was borrowed, and her mother has paid any notes thus far accruing on the balance, this also being considered by her as a loan. These loans she hopes to repay when a settlement of the community between her and Mr. Wilmot is made. The movables in her possession, including jewelry, furniture and silver possess more of a sentimental value than any other as they consist of her engagement ring, things given to her before she and her husband were separated and gifts made to her by her mother. They produce no income. She is no doubt without means for her maintenance. While the manner in which she was accustomed to living is not the test of the amount of the alimony she should receive, her position as custodian of appellant's children, and the expenses incidental thereto, coupled with appellant's property and income, his ability to pay, convinces us that the amount is fair and reasonable, and the trial judge has not abused his discretion.

The judgment on this rule also shall be affirmed. A separate decree shall be entered as to each.

For the reasons stated it is ordered that the judgment appealed from on the rule involving the custody of the minor children in the proceeding bearing No. 40264 of the docket of this Court be and the same is hereby affirmed at the costs of the appellant.

FOURNET, C. J., and HAWTHORNE, J., absent.