129 So.2d 61 (1961)
William F. WILSON, Jr., Plaintiff-Appellant and Defendant-in-rule,
v.
Constance C. WILSON, Defendant-Appellee and Plaintiff-in-rule.
No. 224.
Court of Appeal of Louisiana, Third Circuit.
April 17, 1961.
Rehearing Denied May 9, 1961.
Certiorari Denied June 20, 1961.
*62 George W. Liskow, Lake Charles, for plaintiff and defendant in rule and appellant.
Sandoz & Sandoz, by Lawrence B. Sandoz, Jr., Opelousas, Henry L. Yelverton, Lake Charles, for defendant and plaintiff in rule and appellee.
Before TATE, FRUGE and CULPEPPER, JJ.
CULPEPPER, Judge.
On the petition of Constance Conover, presently the wife of Joseph Gaylord, a resident of New York, New York, a rule issued herein directed to her divorced husband, William F. Wilson, Jr., directing him to show cause why the court's judgment of June 24, 1953, should not be amended so as to increase the alimony for support and maintenance of his two minor children from $150 to $750 per month. From a judgment of the lower court increasing said alimony to $400 per month the defendant in rule has appealed. Plaintiff in rule has answered the appeal seeking a further increase in the lower court's award.
The record shows that on June 24, 1953 a judgment of absolute divorce was rendered in favor of William F. Wilson, Jr. against Constance Conover Wilson, the parties having lived separate and apart for one year subsequent to a judgment of separation. The mother was granted permanent custody of the two little girls, now aged ten and eleven years respectively, issue of said marriage, subject to reasonable visitation rights by the father, who was ordered to pay $150 monthly support for the children. After the divorce the mother married her present husband, Joseph Gaylord, and moved to New York, New York, where she now resides. The father has remained in Lake Charles, Louisiana, where he has remarried and has two additional children.
As grounds for an increase in the alimony, the mother contends that both the income of the father and the needs of the children have increased. As regards the income of the father, the evidence shows that up until July 1, 1960, the defendant in rule and his father owned and operated, as partners, a Cadillac and Oldsmobile automobile agency in the City of Lake Charles. During the year 1959 the net income of defendant in rule from this automobile business and other sources, before taxes, was $54,048.06. However, defendant's accountant testified that during the first six months of 1960, due principally to a loss in car sales, the income of the partnership was reduced substantially. On July 1, 1960, the business was incorporated with defendant owning 48% of the stock. Defendant now receives a salary of $1,000 per month and of course will receive whatever dividends are declared by the corporation. Defendant's accountant testified that for the four month period from July 1, 1960 to October 31, 1960 the business shows a loss of $7,000.
As regards the needs of the children, the only evidence introduced by plaintiff in rule was her own testimony in which she estimated the expenses of supporting and maintaining the two girls in New York City as follows:
"A. These are approximate figures. This is averaged out over a twelve month period. Food, $100.00 a month; milk, $20.00 month; clothing, $10.00 a month; shoes, $10.00 a month; school uniforms, $13.00 a month; *63 school transportation, $2.00 a month; school lunches, 95 cents a day would be about $30.00 a month; entertainment, $15.00; school tuition, $166.00; books and school supplies, $5.00; medical care, $10.00; drugs, medicine, toilet goods, $5.00; dental, $4.00; orthodontist only one of the girls is going at the present time and that's $40.00 a month; dry cleaning and laundry is $40.00 a month; violin lessons for Lillian is $16.00 a month; ballet lessons for Leslie, $5.00 a month; ballroom dancing lessons for both girls, $12.00 a month. On our monthly apartment cost, which is $326.00, I think $100.00 would be a fair share for them, and then on the telephone, gas, electric, cleaning and that kind of thing, $15.00 a month. This doesn't include their camp. It doesn't include that or household goods which are replaced not on an annual basis, such as sheets and towels and blankets, furniture and that sort of thing.
"Q. What is that total there?
"A. The total was $618.00."
Plaintiff in rule also testified that during the years 1958 and 1959, Mr. Wilson voluntarily paid $350 per month, but beginning about January, 1960, he resumed paying only the $150 per month required by judgment and this rule was filed on June 6, 1960.
It is the contention of the defendant in rule that the proper basis for the determination of the needs of these children is not what it costs plaintiff in rule to support and maintain them in the City of New York but is instead what amount would be necessary to support them if they were living with the father in his home in Lake Charles. In support of this argument defendant in rule introduced evidence to show that in Lake Charles two children of like age and circumstances could be adequately fed for $75.44 per month, the private school tuition for two such children would be $42 per month and that apartment rentals in Lake Charles range from a top figure of $250 per month down to $125 per month for the better class of apartments. Defendant in rule argues that the lower court erroneously determined the needs of the children on the basis of what is necessary to maintain them in the City of New York, instead of the amount which is necessary for their support in Lake Charles. A reading of the following portion of the trial judge's well considered written opinion will show that he did not determine the amount of the alimony award on such a basis:
"The custody of the children was awarded to the mother, who has the right to live with them wherever she desires. She cannot require payment in excess of the "wants" of the children, nor should the children be penalized because of the domicile selected for them by the mother. Under the authority of Wilmot vs. Wilmot, 223 La. 221, 65 So.2d 321, and [LSA-] Civil Code Articles 230 and 231, the court finds that the children's custom of living (though on a scale higher than the average) would be about the same regardless of the person having their legal custody. Their advantages should not be diminished in this case, where their father is able to continue providing for the same."
In the case of Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321, 329, where the father was worth in excess of $300,000 and his income ranged between $30,000 and $37,000 per year, of which $12,600 was salary and the balance in dividends and interest, the court awarded $425 per month for support of two children and held as follows regarding the basis of its opinion:
"His obligation to support, maintain and educate the children is fixed by Article 227, LSA-C.C. and must be granted according to the provisions of Article 230 et seq., in proportion to the wants of the persons requiring it, and the circumstances of those who are to *64 pay it. Obviously, the wants of appellant's two children are greater than those of the children of parents of less means. They attend private schools, receive dancing, horseback riding, and swimming lessons, and wear expensive clothes. This would be their custom of living under the father's custody. The divorce and custody of the children in the mother should not be allowed to diminish these advantages. We find that $425 a month for the support of the children is little enough in view of father's ability to pay."
In the more recent case of Williams v. Barnette, 226 La. 635, 76 So.2d 912, 914, where the father was a doctor with a much better than average income, the court awarded $90 per month alimony for one child and in addition ordered the father to pay all bills for music, art, dancing and voice lessons, together with all expenses for the child's parochial schooling. After citing with approval the Wilmot Case, supra, the court held as follows:
"It is apparent that the trial judge, in fixing the alimony herein, was aware of his duty to take into consideration the means and financial circumstances of the father. Indicative of the awareness were certain comments made by him during the trial and also the following statement contained in his written reasons for judgment: "The formula given by the legislature in determining the amount of alimony due by a father for the support of the minor child consists of two elements. First, the want of a person requiring it, and the circumstances of the father, financial circumstances of the father. In this case it is admitted that the father's financial circumstances are such as to meet all of the needs of the child. * * *"
It is our opinion that in the instant case the trial court, as shown by the above quoted portion of its opinion, has properly followed the jurisprudence of our Supreme Court by awarding the amount found necessary to maintain the children in the custom of living which they would enjoy if they were under their father's custody.
Defendant in rule also contends that his present income is not sufficient to pay an alimony award of $400 per month. As stated above, since the business was incorporated on July 1, 1960, defendant in rule has received a salary of $1,000 per month. Defendant in rule's accountant testified that for a four month period from July 1, 1960 through October 31, 1960, the corporation had lost $7,000 and from this evidence defendant in rule argues in effect that he would not receive any dividends in 1960. The trial court found that although the evidence indicates the probability of a reduction in defendant's income, he should still pay $400 per month for the support and education of his children. Undoubtedly the trial court was largely influenced by the fact that during the calendar year 1959 defendant in rule had a net income of $54,048.60. The fact that defendant in rule reinvested a portion of his 1959 income in the business indicates his faith in its prospects for the future. The loss of $7,000 during a four month period of the summer months was not considered by the trial court to indicate that the business would show a drastic loss over a period of the entire year 1960 and we feel that the trial court's conclusion in this regard was very reasonable and logical.
The next contention of defendant in rule is that the plaintiff has failed to prove any change either as to the needs of the children or the income of the father since the date of the original judgment in 1953, which would justify such a drastic increase from $150 to $400 a month. Defendant in rule cites no authority for this argument but it is our appreciation of the jurisprudence that an award of alimony for the support and maintenance of minor children is subject to change, adjustment or modification at any time that the circumstances justify it. Rabun v. Rabun, 232 La. *65 1004, 95 So.2d 635, Wilmot v. Wilmot, supra, and Williams v. Barnette, supra.
Although defendant in rule contends that the lower court's award of $400 per month is excessive and suggests that not more than the sum of $329.94 is justified by the evidence, we are of the opinion that the award is amply justified by the evidence and should not be changed. The jurisprudence is well settled that the trial judge should be given wide discretion in determining the amount of alimony awards. Butterworth v. Butterworth 203 La. 465, 14 So.2d 59; Wilmot v. Wilmot, supra.
Plaintiff in rule has answered this appeal and contends that the award is inadequate. This argument has no merit. As stated above, the alimony awarded by the lower court is amply supported by the evidence and will not be disturbed.
Plaintiff in rule also contends that the trial judge erred in ruling that the father would not be required to make any alimony payment for the summer month during which the children are visiting in his home in Lake Charles. The pertinent portion of the trial court's written opinion reads as follows:
"No alimony payment shall be made for any summer month during which the children may visit the father at Lake Charles. The increased alimony herein fixed by the court covers certain monthly expenses, some of which may not be incurred during the summer, but any excess for the summer period should provide for attendance at summer camps, which is an advantage customarily afforded these children."
The trial judge did not indicate, in his written opinion, which of the items of monthly expense he felt may not be incurred during the summer but a reading of the mother's list of expenses indicates the trial judge might have felt that the items for school tuition, books and supplies, school lunches, school transportation, violin lessons, ballet lessons and ballroom dancing lessons would probably not be incurred during the summer months. Certainly during the summer month that the children are visiting with their father in Lake Charles, plaintiff in rule would have no expense of the children for food, milk, entertainment or drugs and toilet articles. As stated above, the trial judge must be given wide discretion in determining the amount of alimony for children and we do not find that he has abused his discretion or committed manifest error. A similar award by the trial court was approved on appeal in the case of Williams v. Barnette, supra.
Plaintiff in rule also contends that the District Judge erred in increasing the alimony payment to $400 per month effective as of November 1, 1960, instead of making the judgment effective as of the date the rule was filed on June 6, 1960. As shown by the judge's written opinion the basis of his ruling in this regard was that "there was no evidence to establish that expenses had not been met previously or that the children had been deprived of any advantages". Plaintiff in rule cites no cases in support of this argument. We are of the opinion that this also was a matter which addressed itself to the discretion of the trial judge, which discretion we are unable to say has been abused.
For the reasons hereinabove set forth the judgment appealed from is affirmed. All costs of this appeal are assessed against the defendant in rule and appellant, William F. Wilson, Jr.
Affirmed.

On Application for Rehearing.

En Banc. Rehearing denied.