BARNETTE, Judge.
This proceeding involves a contest between the father, Paul Fayard, Jr., and mother, Mrs. Lorna Fayard, over the custody of three children, now approximately eleven, seven and five years old. Mr. and Mrs. Fayard were judicially separated by judgment of the Civil District Court for the Parish of Orleans on December 15, 1964.
During the pendency of the suit for separation, a judgment on rule, October 10, 1963, awarded the custody of the children to the mother, conditioned upon the children’s remaining in the State of Louisi *306 ana.[1] Sometime thereafter, 'the mother, Mrs. Loma Fayard, went to the State of New York to the home of her mother and step-father, taking the children with her in violation of the district court’s order that they remain in Louisiana.
The father then proceeded by rule against his estranged wife seeking a revocation of the judgment of October 10, awarding custody to the mother. On November 27, 1963, the court found that she had violated its order, revoked its custody order of October 10, and entered judgment granting the father custody of the children. In its “Reasons for Judgment” the court .said:
“And, the record should show that if after further consideration by the respondent she decides to return to the State of Louisiana in compliance with the Court’s order, the Court will then consider restoring these children to her custody.”
At this point it became necessary for Mr. Fayard to go to New York and pro■ceed against his wife in the courts of that ■state to enforce the judgment of the district court of November 27. After considerable expense and inconvenience to Mr. Fayard, the children were returned to New ■Orleans in February, 1964. A further judgment on rule was rendered March 10, 1964, returning the children to the custody of the mother, conditioned upon their remaining in Louisiana, and subject also to visitation privileges of the father.
On December 15, 1964, a judgment of ■separation from bed and board was granted in favor of Mrs. Fayard,[2] granting to her also “permanent care, custody and control of her minor children Kenneth, Darryl and Beverly” and condemning Mr. Fayard “to continue to pay alimony in the sum of $150.00 per month for the support of his minor children.” On May 7, 1965, a judgment on rule restored the visitation privileges of'Mr. Fayard, on which point the judgment of December 15 was silent.
On July 27, 1965, Mrs. Fayard filed motion for rule, seeking to obtain modification of the court’s previous orders that the children remain in Louisiana and praying for permission to take them to the State of New York to reside with her there. On August 12, 1965, judgment was rendered substantially as prayed for, granting Mrs. Fayard permission to move her residence to the State of New York “where she is to continue to have the care, custody and control of her three minor children, BEVERLY, DARRYL and KENNETH FAYARD. The defendant, PAUL FAY-ARD, JR., shall have visitation privileges for the month of July or the month of August in New Orleans or in New York at his option and his expense, provided that he may visit with the children for one day on at least four other occasions during the balance of the year; provided further that the visitation is in New York State and at the father’s expense. The defendant shall notify the plaintiff in writing at least one month prior to each visitation.”
From this judgment the father, defendant-appellant, has perfected this devolutive appeal.
In denying motion for new trial following his judgment of October 10, 1963, in which the mother’s custody was conditioned on *307 remaining in Louisiana, the trial judge said:
“I gave custody to this wife with some trepidation. I was not completely happy about it. I didn’t put this in the original judgment, but now that we have argued a Motion for a New Trial I think I should. Frankly, I’m uneasy about both of these parents. I think that they both showed some lack of maturity, some lack of responsibility which I don’t like to see in parents, and I was somewhat uneasy about them both. I was not too impressed by this mother on the witness stand. Her demeanor was worrisome to me. I worried about the allegations which were made concerning her mental condition and her reaction to those allegations. I don’t say that she admitted that she was having problems, but she didn’t deny it. I mean she didn’t talk about it like I would have liked to have seen and liked to have heard, and generally I worried a great deal about this case, and I worried about custody to this mother and the fact that she might be some two thousand miles away from the jurisdiction of the Court and from the watchful eye of the husband. I think that probably (and this is non-medical and inexpert conclusion), but I think that probably both their problems were one another. I got the impression that they were both completely and utterly incompatible, and it may be that both of their troubles arose out of their inconsistencies and their conflicts, and it may be that they both will be happier separated, but at the same time, while they’re making the adjustment to being separated and while the children are making the adjustment of not having their father there, while the one who has custody is working out her own problems, I’d rather for them to be here in the vicinity of the Court. * * * >’
' Twenty-two months later, on the last trial of the custody issue, August 10, 1965,. he made the following comment:
“The Court might observe the difference when Mrs. Fayard was in here before she did appear to be distressed, extremely distressed, and it was one-of the factors in my insisting that she stay here, but quite the contrary is true today. Mrs. Fayard appears to have her emotions completely under control. She speaks quietly, intelligently and unemotionally about very emotional problems, which gives me the impression, as a layman looking at her, that if she was suffering from any mental disturbance in the previous hearing she certainly is not now.”
A careful reading of all the testimony in the record convinces us that the foregoing observations of the trial judge seem to have been justified. He was certainly in a better position, having seen and heard the parties and observed their reactions when they appeared before him over a period of nearly two years, to appraise their suitability to be entrusted with the custody of the children than we are. There is nothing in the record to. suggest an abuse of his discretion in choosing between the father and mother.[3]
It would serve no useful purpose for us to recite details of testimony. The appellant is not complaining so much (if at all) of the award of custody to the mother, but rather of that portion of the judgment which permits her to take them to the State of New York, thus virtually depriving him of reasonable contact and visitation privileges. This is a right which we do not *308 consider lightly. Furthermore, we recognize the right of the children to know, to love, and to have companionship with their father. These rights are inherent, even sacred, in the parent-child relationship and should be protected as far as possible until forfeited by unworthiness or where the exercise of the right would be inimical to the child’s welfare.
We have read and considered all the authorities cited in briefs of the appellant and appellee and more, and find in them ample authority for a court in the exercise of its discretion to permit children under its custodial jurisdiction to be removed from the state.
These authorities were discussed in Sachse v. Sachse, 150 So.2d 772 (La.App. 1st Cir. 1963). Counsel for appellant relies upon this case and the following authorities cited therein: Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); Carlson v. Carlson, 140 So.2d 801 (La.App. 4th Cir. 1962) ; 27B C.J.S. Divorce § 313; and others in support of his argument that “[i]t is against the policy of the law to permit the removal of children from a jurisdiction where the removal is not to their best interest or to the best interests of the parent who has been denied custody.” (Emphasis added.)
The foregoing authorities and others, including the Annotation at 154 A.L.R. 552, where numerous cases are cited, support appellant’s argument except that portion above quoted in italics. We have been unable to find in any of the authorities cited support for this latter contention. The cases cited by appellant[4] and discussed in the A.L.R. Annotation, supra, merely recognize the hardship placed on parents denied custody in exercising visitation rights with children in distant places and seek to protect this right by some appropriate decree. We have recognized this factor and express ourselves thereon below.
It is universally recognized that the better policy generally is to deny permission to remove children under custody from the court’s jurisdiction, but this is nowhere construed as a prohibition against such removal. The controlling factor for consideration is the best interests of the children. It is best summed up in 27B C.J.S. Divorce § 313 as follows:
“Since the jurisdiction of the trial court over the persons of parties to a divorce action gives it the power to control their actions with respect to the jurisdiction their children are to be kept in, the court may direct that the parent to whom the custody is awarded shall not, without its permission, remove the children from the jurisdiction of the court, and it may decree that the right to custody shall continue only while the parent remains within the state. It has also been held, however, that the court, in the absence of a finding that the removal of the children would prejudice their rights or welfare, has no right to prohibit the parent having custody from removing them from the state.
“As a general rule, it is against the policy of the law to permit the removal of the child from the jurisdiction unless its welfare would be better subserved thereby, and ordinarily custody should not be awarded to a nonresident or to one contemplating immediate removal from the state. It has been held, however, that whether or not removal of a child from the jurisdiction should be allowed, or whether the custody of a *309 child shall he awarded a nonresident parent, rests within the broad judicial discretion of the court; and in all such matters the welfare of the child is the controlling consideration.”
This general rule was applied in Wilmot v. Wilmot, supra, and Carlson v. Carlson, supra, and quoted as above in Sachse v. Sachse, supra.
We do not rest our judgment alone on the following statement of Dr. Dorsey, psychologist, nor did the trial judge, but it expresses well our own sentiments, and evidently those of the trial judge:
“Again I’d like to say that whether it be New York or Louisiana or anywhere else where she is going to be, feels secure in her role. Anything would he better than what’s going on now.” (Emphasis added.)
The trial judge has followed the above authorities and given proper consideration to the testimony of the witnesses. We find no abuse of his discretion, except perhaps in the timeliness of its exercise.
A separation from bed and board is allowed under our laws for causes less grievous than those required for an immediate judgment of divorce. The requirement that at least a year must elapse before a judgment of separation can be converted into a final and total dissolution of the marriage by divorce, is founded upon the hope that during this period of suspension the parties will become reconciled and thus save their marriage. In many cases, and perhaps this one is no exception, this is a vain hope. Nevertheless, we do not approve of the judgment before final divorce allowing the children to be removed from the State to establish a permanent residence elsewhere, far beyond the reach of the courts of this State. To do so for all practical purposes defeats all hope of reconciliation and reestablishment of their home. Certainly courts should not obstruct any conciliatory efforts to save the home of children as long as there is any reasonable hope. We recognize, however, that there may be some exceptions where the welfare of the children is a compelling consideration.
From the evidence in the ■ record before us, we do not think there are compelling reasons why these children should have been permitted to go to New York before final dissolution of the marriage. That it might have suited their mother’s convenience or conduced to her personal pleasure and happiness is not enough. However, inasmuch as a final divorce will be possible in this case by the time a judgment on this appeal can become final, we think a greater harm would be done the children if they were again uprooted and subjected to all the emotionally upsetting incidents which a return to New Orleans for a short time would precipitate. The rights of their father and all other considerations must yield to their paramount interests. We refuse to subject them to further harm merely to avenge the father or to discipline the mother or to vindicate our own above-expressed opinion that permission for them to go to New York might have been premature.
Returning again to a consideration of the rights of the father and children to mutual love, respect and companionship, we are not unmindful of the hardship imposed on them in the exercise of these inherent rights by the distance of their separation, infrequency of visits, and expense of travel.
Mr. Fayard is a man of limited means. Mrs. Fayard, while not wealthy, apparently has an independent income from an inheritance and enjoys a comfortable standard of living in a suburban setting near Pough-keepsie, New York. There is no indication that the children would be in needy circumstances even if their father did not contribute to their support. However, he should *310 and must, and in fact is quite anxious to do so within his means.
The judgment of December 15, 1964, ordering the father to pay $150.00 per month for support of the children, is reasonable. However, the added expense imposed upon him to spend a month in New York or bring the children to New Orleans to exercise his right of visitation, makes the privilege almost impossible. We have given consideration to means by which some relief could be given Mr. Fayard to offset some of the expense to be incurred by him in exercising his right of visitation, bearing in mind that it is a right not reserved to him alone, but also one of importance to the children. Their enjoyment of this right should not be hampered by burdensome conditions. Since the judgment of December 15, 1964, is not before us on appeal, we are without authority to modify it. If and when the trial court renders a final judgment of divorce, or in the exercise of its continuing jurisdiction, that court may then, in its discretion, give further consideration to this matter.
Counsel for Mr. Fayard has raised the question of enforcement of visitation privileges in the event Mrs. Fayard, being out of the State, should arbitrarily refuse to abide by the court’s orders, pointing to the fact that she did violate the court’s order on one occasion. In the first place, she has already taken the children to New York, and this question is moot Secondly, she and the children are still subject to the court’s continuing jurisdiction; and, as long as the court has the enforcement authority regarding the support payments to augment its general inherent authority of enforcement, we have no doubt that appropriate measures will be invoked if the need arises.
For the reasons herein expressed, the judgment appealed from is affirmed at appellant’s cost.
Affirmed.

. Application for new trial by Mrs. Fayard, who objected to the condition that the children remain in Louisiana, was denied; whereupon she sought relief from this Court through the exercise of its supervisory jurisdiction on the argument that her constitutional rights had been violated. Writs were refused, November 8, 1963.

. The original petition was filed July 23, 1963, based on charges of cruelty. A new petition was filed on September 18, 1964, based on living separate and apart for more than a year. The judgment was on this latter petition.

. Fitzgerald v. Fitzgerald, 232 La. 916, 95 So.2d 497 (1957); Decker v. Landry, 227 La. 603, 80 So.2d 91 (1955); Kieffer v. Heriard, 221 La. 151, 5S So.2d 836 (1952); Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456 (1949); Capuder v. Misko, 177 So.2d 592 (La.App. 3rd Cir. 1965).

. State ex rel. Graveley v. District Court, 119 Mont. 276, 174 P.2d 565 (1946); Turner v. Turner, 86 N.H. 463, 169 A. 873 (1934); Goodrich v. Goodrich, 209 Iowa 666, 228 N.W. 652 (1930); and Baer v. Baer, 51 S.W.2d 873 (Mo.App.1932). Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); White v. Broussard, 206 La. 25, 18 So.2d 641 (1944); and Carlson v. Carlson, 140 So.2d 801 (La.App. 4th Cir. 1962), cited by appellant, are not relevant to this point.