CULPEPPER, Judge.
This is a companion suit to Misko v. Capuder, 177 So.2d 596, in which a separate judgment is being rendered by us this date. These cases, consolidated for trial and appeal, involve the custody of 3 minor children born of the marriage between the parties. The District Judge awarded custody to the father. The mother has appealed.
The general facts show that Albert L. Capuder and Louise Misko are both college professors. They were married and divorced from each other on two occasions. They were first married in 1940 at Pittsburg, Pennsylvania, where both were domiciled. Soon thereafter Mr. Ca-puder secured employment as a professor at the University of Southwestern Louisiana in Lafayette and the matrimonial domicile was established there. No children were born of the first marriage. It terminated by divorce in 1949.
The parties married a second time in New Iberia, Louisiana, in 1950. Of this marriage were born the 3 children in dispute: Douglas, 13 years of age; Christine Louise, 11 years of age; and Drew, 8 years of age. The parties were again divorced in 1959 and Louise Misko was awarded custody of the children. She returned with the children to Pittsburg, Pennsylvania, and lived there with her mother until October of 1962, at which time she married John Demer, an attorney, and moved to his home in Cleveland, Ohio.
Shortly thereafter, Mr. Demer, who suffered from heart disease, became ill and they planned a trip to Europe for his health. On March 10, 1963, Mrs. Demer (Louise Misko) brought the 3 children to Louisiana and left them with their father, ostensibly intending that on her return from Europe in June of 1963, she would take the children back to Cleveland. But, on her return from Europe, Mrs. Demer did not ask for the return' of the children. Her explanation is that Mr. Demer was ill and he was not “equal to 3 active children”. The children have been with their father in Lafayette since that time.
On March 25, 1964, Louise Misko was divorced in Ohio by John Demer. She obtained employment teaching, and in the early part of June, 1964, she returned to Lafayette for the children, with the announced intention of taking them back to Pennsylvania. Mr. Capuder refused to give up the children and filed the instant proceedings asking that the previous custody award herein be rescinded and that he be granted permanent custody. Louise Misko then filed the separate companion suit asking that the previous custody order be enforced and that possession of the children be delivered to her. The consolidated cases were tried on June 18 and 19, 1964.
In seeking a reversal of the trial court judgment, Louise Misko relies primarily on the cases which hold that a parent seeking to change a prior custody judgment bears the burden of proving a change of circumstances, indicating that the best interests and welfare of the children require a change in the previous cus *594 tody order. Decker v. Landry, 227 La. 603, 80 So.2d 91; Pepiton v. Pepiton, 222 La. 784, 64 So.2d 3; Hanks v. Hanks, La.App., 138 So.2d 19 (1st Cir. 1962); Gentry v. Gentry, La.App., 136 So.2d 418 (1st Cir. 1961); Smith v. Smith, La.App., 141 So.2d 84 (1st Cir. 1962); Reeves v. Reeves, La. App., 150 So.2d 58 (2nd Cir. 1963); Gary v. Gary, La.App., 143 So.2d 411 (3rd Cir. 1962). We will state here that the present case does not involve the controversy amongst members of this court in Gary v. Gary, supra, as to whether it is incumbent on the parent seeking a change in a prior custody order to show changes both in the circumstances of the party having custody, as well as the parent seeking custody. As will be shown by our discussion of the facts of this case, we think a change of circumstances definitely has been shown as to Louise Misko, the parent having custody, as well as to Mr. Capuder, the parent seeking custody, and that, viewed as a whole, these circumstances are such that the best interests and welfare of the children require a change in the previous custody order.
Louise Misko also relies on the well-established general rule that the custody of minor children should be awarded to the mother, in preference to the father, unless the mother is shown to be morally or otherwise unfit. See Messner v. Messner, 240 La. 252, 122 So.2d 90 (1960) and the cases cited therein. Appellant also calls attention to the jurisprudence that where a mother, due to temporary conditions such as illness or lack of finances; allows the father to have possession of her children, she does not necessarily thereby abandon the children and lose her right to claim their custody when she becomes able to care for them. Drouin v. Hilden-brand, 235 La. 810, 105 So.2d 532. Also, the jurisprudence that the expressed wish of a child to live with one parent, in preference to the other, is a factor to be considered, but is not controlling on the court in awarding custody. Holley v. Holley, La.App., 158 So.2d 620 (3rd Cir. 1963).
On the other hand, Mr. Capuder relies heavily on the firmly established jurisprudence that in custody cases the trial judge is granted much discretion and his decision will not be disturbed unless he has clearly abused this discretion. Decker v. Landry, supra; Sampognaro v. Sampognaro, 215 La. 631, 41 So.2d 456. Mr. Capuder also cites cases holding that although preference is given to the mother, custody will be awarded to the father in special cases where it is shown that it would be for the best interests and welfare of the children. Reeves v. Reeves, 150 So.2d 58 (2nd Cir. 1963); O’Pry v. O’Pry, La.App., 163 So.2d 807 (2nd Cir. 1964); Sampognaro v. Sampognaro, supra; Ha-thorn v. Hathorn, 237 La. 554, 111 So.2d 770 (1959); Ard v. Ard, 210 La. 869, 28 So.2d 461 (1946). Plaintiff also calls attention to the general rule expressed in Sachse v. Sachse, La.App., 150 So.2d 772 (1st Cir. 1963) that ordinarily custody should not be awarded to a nonresident, or to one contemplating immediate removal from the state, unless the welfare of the child clearly requires the award of custody to such nonresident.
At the outset, it is appropriate to state the evidence does not show, and the trial judge did not find, that the mother is morally unfit or physically unable to take care of the children. However, the evidence does show that after Louise Misko moved back to Pittsburg, Pennsylvania, with the children in 1959, they were exposed to circumstances seriously adverse to their welfare. Louise Misko and her mother, who still lives in Pennsylvania, engaged in frequent quarrels and even physical fights. The children testified of one occasion on which Louise Misko “backed Grandmother up against the stove with a butcher knife at her throat”. Louise Misko also had frequent quarrels with her brother and was even in a law suit with her mother and brother as to the deed to certain property. The children also testified as to instances when their mother, in fits of uncontrolled temper, beat them in *595 a manner which the children thought unjustified by their offenses. It is very sad, but these children actually testified they were not sure they loved their mother, or that she loved them.
The evidence is also clear that after Louise Misko married Mr. Demer in 1962 and went on the trip to Europe, she voluntarily chose to leave the children in Lafayette with Mr. Capuder, rather than take them back to Cleveland, allegedly because Mr. Demer was not “equal to 3 active children”. Since that time the children have been in Lafayette with Mr. Capu-der and Louise Misko has seen them only rarely. It was not until after Mr. Demer divorced her that she returned to Louisiana and now seeks to regain custody of the children. We think the trial judge was fully justified in stating his opinion that if Mr. Demer had not divorced her, she would not even now be seeking custody of these children. Even though this be not considered an abandonment by Louise Mis-ko of her children, it is certainly an indication of lack of concern for their interests and welfare, which is a factor to be considered in this case.
There is much other evidence to show that Louise Misko is quick tempered, easily offended, and a person who by nature apparently thrives on controversy. The very fact that she has been married and divorced 3 times is indicative. In addition to the controversies with her own mother and brother, Mr. Capuder and the children testified as to frequent fights in the home here in Lafayette. There was one occasion when Louise Misko “pulled a knife” on Mr. Capuder. Furthermore, the evidence shows that after Louise Misko moved to Pennsylvania, she tried her best to have Mr. Capuder fired from his employment with the University of Southwestern Louisiana. She wrote letters to the head of Mr. Capuder’s department urging his dismissal, and even accused Mr. Capuder of being a Communist. This resulted in an investigation by the University Officials, which, incidentally, resulted in a clearance of Mr. Capuder as to these charges.
On the other hand, it is abundantly clear from the evidence, that the children are very happy with their father. They wish very much to remain with him in Lafayette, where they were born and have lived all of their lives except for the short time they were in Pennsylvania with their mother. Mr. Capuder is a professor of speech at the University, earning about $11,000 a year. He provides for the children a comfortable home, the very best of education, much fatherly affection, a maid to care for the children each day until he returns home from work and, generally, very excellent circumstances for their welfare.
In a very sincere and well-reasoned opinion, the trial judge concluded as follows:
“It is well settled in our jurisprudence that a judgment granting to either parent the care and custody of the minor children is not irrevocable and is subject to modification or change at any time when a change of conditions demands it. The Court believes that there has been such a change of conditions. The conditions to which these children were exposed during their custody with their mother and the fact that she gave the children to the father in an effort to please her new husband certainly reflects a change of conditions. This added to the fact that the children do not want to return to their mother. Additionally, we must also bear in mind what is best for the children, their best interests, welfare and happiness. It is the Court’s very strong opinion that it is to the best interest and welfare of the children that the custody be granted to their father. The Court finds that the facts in this case are somewhat, if not completely similar to the facts in the case of Reeves vs. Reeves, La.App., 150 So.2d, 58. The Capuder children, during the time that they were in the custody of their moth *596 er were exposed to nerve-racking conditions. They have developed a sad and heart-rending attitude toward their mother. To send them hack to their mother at this time would, in the Court’s opinion, be a bad mistake and would be detrimental, not only to them, but to their mother as well. It is hoped as was likewise stated by the trial judge in the Reeves case, supra, that time will heal the difficulties which have arisen and a more loving attitude will develop between the mother and the children. The Court considers that this is a special case necessitating the depriving of the mother of the custody of these children.”
As is stated in the above cited cases, the trial judge’s appreciation of the situation, and what is best for the welfare of these children, is entitled to the greatest weight and respect. In a two day trial he saw the parties and the children and observed them at first hand. After which he made a solemn determination as to the best interests of these children. We think the trial judge’s decision was clearly within the bounds of his great discretion in such cases.
A final argument by defendant appellant is that plaintiff’s petition did not allege any immorality of defendant or the knife incident between Louise Misko and her mother or that involving Mr. Capuder. Defendant objected to this evidence on the grounds it was not pleaded sufficiently as a fact, LSA-C.C.P. art. 854.
The modern trend is toward liberal construction of pleadings, so that the ends of justice may be served, rather than technical niceties. Merrimack Mutual Insurance Company v. Sears Roebuck & Company, La.App., 128 So.2d 239 (2nd Cir. 1961); Cuccia v. Pratt Farnsworth, Inc., La.App., 155 So.2d 41 (4th Cir. 1963). We think plaintiff’s petition was sufficient to advise defendant that a principal issue in this litigation would be the circumstances to which the children were subjected in Pennsylvania. The children’s testimony as to fights between Louise Misko and her mother was admissable as evidence under these allegations, particularly since the ends of justice are of paramount concern in this type of case. The same is true of the testimony regarding the knife incident with Mr. Capuder, and although this latter incident occurred before the 1959 custody order, it was admissable to corroborate the other evidence as to Louise Misko’s violent nature.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant appellant, Louise Misko.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.