45 So.2d 96 (1950)
HOLICER GAS CO., Inc.
v.
WILSON et al.
No. 7473.
Court of Appeal of Louisiana, Second Circuit.
March 8, 1950.
Rehearing Denied April 5, 1950.
*97 Carstarphen & Carstarphen, Shreveport, for appellant.
Irion & Switzer, Shreveport, Harry A. Johnson, Jr., Shreveport, Blanchard Goldstein, Walker & O'Quin, Shreveport, Albert E. Bryson, Shreveport, Booth, Lockard & Jack, Shreveport, for appellees.
HARDY, Judge.
This is a suit in which plaintiff claims the ownership of a butane gas tank alleged to be located on property belonging to the defendant, and seeks judgment ordering delivery of said tank into its possession.
There was judgment originally in favor of defendant rejecting plaintiff's demands, but, on appeal, this court vacated the judgment by reason of the nonjoinder of a necessary party, and remanded the case to the District Court, Holicer Gas Co., Inc., v. Wilson, La.App., 39 So.2d 637. After remand the party in question, being the present owner of the premises, was made a party defendant. Upon retrial there was again judgment rejecting plaintiff's demands, from which plaintiff and other parties prosecute this appeal.
There is practically no dispute with respect to the material facts involved. On or about April 11, 1946, plaintiff entered into what is designated as a "consumer's contract" with A. A. Booras and wife, owners of a particularly described tract of land located in Caddo Parish, Louisiana. Under the terms of the contract the owners of the property agreed to purchase from plaintiff all butane gas required for the servicing of the buildings and improvements on said property, and, in consequence of this agreement, plaintiff placed upon the property a particularly described 500 gallon capacity butane tank.
The written agreement between plaintiff and Booras was never recorded. Some time subsequent to this transaction Booras sold the property in question to one Glenn v. Wilson, and, later, Wilson sold the property to Thomas E. Brown.
A number of incidental pleadings are involved in this matter. In aid of the enforcement of its demands plaintiff procured the issuance of a writ of attachment against property of Booras, a non-resident, in custody of the First National Bank of Shreveport. Proper calls in warranty were filed by Brown against Wilson and Wilson against Booras, which were answered by the parties called.
An accurate description of the gas tank is found in the testimony of A. W. Prather, a district manager of plaintiff corporation, which is quoted as follows:
"It is a spherical tank. An egg-shaped steel tank about six and one-half feet (6½') high, four feet (4') in diameter, weighing around two thousand pounds (2,000 lbs.). It has three legs welded stationary to the tank, about eighteen to twenty-four inches (18 to 24") long, clearing the tank from the ground about twelve to fourteen inches (12 to 14") from the bottom of the tank. These three legs set on concrete blocks about eighteen inches (18") square with a hole possible two inches (2") deep in them. Two inches deep by two inches in diameter, which is the diameter of each leg which sets down in a concrete block. These concrete blocks set on top of the ground and the tank sets on top of those.
"The tank is connected to the house line by flexible copper connection with one nut tightened, and the gas is ready to turn on."
The only qualification as to the description above set forth is found in the testimony of other witnesses from which it is established that the concrete blocks in question, although they may have been originally set on the surface of the ground, have sunk or been buried until they are no longer visible.
It was also established that the weight of the tank was approximately 2,000 pounds and that, filled with butane gas, the total weight would approximate 4,000 pounds.
*98 Further testimony of the witness Prather, which is pertinent to the issues involved herein, was tendered on cross-examination, as follows:
"Q. Mr. Prather I believe you state that this tank was installed on the property by your company on the order and the request of Mr. Booras? A. That is right, yes.
"Q. And it was placed there when you serviced their property for gas, is that correct? A. Beg pardon?
"Q. It was placed there to service this property with gas? A. Yes.
"Q. It is the sole source of supply of gas to the property, isn't that a fact? A. Yes, sir.
"Q. And the pipe leads from this tank under the ground, does it not? A. Most of the pipe is under ground, yes.
"Q. That conducts the gas from the tank into the house, is that right? A. Yes.
"Q. And that residence, which has several rooms to the home, is hooked on to a separate pipe, which in turn is hooked to the pipe from the bank, is that correct? A. Yes.
"Q. And in these rooms there are heaters to burn this gas for warmth and also use for cooking purposes, isn't that true? A. Yes.
"Q. There are other buildings, other than the residence, on this property, isn't that true? A. Yes, sir.
"Q. And does this tank service them too? A. One of them is piped into the main. I put it in one building myself.
"Q. Other than the home? A. Other than the main home.
"Q. That was the garage? A. Combination garage and washroom.
"Q. And there is also a guest house on that property? Do you know about that? A. No, sir.
"Q. You know it was also carried to this line? A. No, sir.
"Q. In order to get the picture perfectly clear, this line that runs from the tank to the ground is in turn connected to a pipe under the ground. Gas flows through that into the house and then by various means in subsidiary pipe? A. Yes.
"Q. Same thing in the garage and washroom? A. Yes."
The basis of the contention made by the parties is simple. Plaintiff asserts that it owns the tank which it describes as movable equipment; that it was loaned to Booras, the then owner of the property, in consideration of the provisions of the "lend lease" agreement between the parties, and, the tank being a movable, ownership did not pass to the successive purchasers of the realty. As opposed to this contention both Wilson and Brown assert that the tank became an immovable either under the provisions of Article 464 of the Civil Code, or Article 467 or Article 468, or all. The pertinent articles relied upon read as follows:
"464. Real estate and structures thereon. Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature."

* * * * * *
"467. Fixtures.Wire screens, water pipes, gas pipes, sewerage pipes, heating pipes, radiators, electric wires, electric and gas lighting fixtures, bathtubs, lavatories, closets, sinks, gasplants, meters and electric light plants, heating plants and furnaces, when actually connected with or attached to the building by the owner for the use or convenience of the building are immovable by their nature."
"468. Immovables by destinationIllustrations. Things which the owner of a tract of land has placed upon it for its service and improvement, are immovable by destination.
"Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to-wit: Cattle intended for cultivation. Implements of husbandry. Seeds, plants, fodder, and manure. Pigeons in a pigeon house. Beehives. Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works. The utensils necessary for working cotton, and sawmills, taffia distilleries, sugar refineries and other manufactures. All such movables as the owner has attached permanently to the *99 tenement or to the building, are likewise immovable by destination."
Defendant's contentions are met by plaintiff on the ground that Article 464 does not apply for the reason that the tank cannot be construed as a "building" or "construction", and that Article 467 is not applicable because "tanks" are not among the fixtures enumerated in the article. With further reference to the inapplicability of Article 467, plaintiff claims that even if the enumeration of fixtures in Article 467 be held to be examples and not an exclusive list, then the tank involved in this case would still be outside the provisions of the article for the reason that it was not "actually connected with or attached to the building by the owner".
Similarly, application of Article 468 is resisted on the ground that the tank was not placed upon the land by the owner.
The above are the issues of law comprehended, and it is at once perceived that the determination of this cause must inevitably rest upon the conuclsion reached as to whether the gas tank shall be considered a movable or an immovable.
In our opinion the facility with which a structure may be transported, placed and displaced, is not a reliable guide. In Vaughn v. Kemp, 4 La.App. 682, the court held that a small structure set above ground on wooden blocks by a landowner's lessee became an immovable by nature and this despite the existence of an agreement permitting the removal by the lessee on termination of the lease.
Similarly, a cistern was held to be a "construction", immovable by nature, under Article 464, Polhman v. De Bouchel, 32 La.Ann. 1158.
Nor are we disposed to accord great weight to plaintiff's contention that the gas tank occupies the status of a movable because it was manufactured or fabricated before being placed upon the property. We have been able to find nothing in the law or jurisprudence of this State which requires buildings or constructions to be actually built or constructed upon the land in order to be classed as immovable. Such a conclusion would be utterly unjustified, and, in these days of prefabrication, would lead to absurd consequences entirely incompatible with the obvious intent of the codal provisions.
Proceeding to an interpretation of the articles of the Code, we feel that it is definitely settled by the jurisprudence of this State that lists of examples are not to be construed as being exclusive or restrictive. This conclusion is further substantiated by the provisions of Section 2 of Act 51 of 1912 (the act amending Article 467 of the Civil Code), which declares that "no court shall have jurisdiction or power to declare that any such articles above referred to are movables and treat them as such". (Emphasis by the court.)
Considering the several requirements of Articles 464, 467 and 468, it appears quite clear to us that the gas tank, the subject matter of this litigation, is to be regarded as both a "construction" and a "fixture" and, finally, as a "thing" which the owner of a tract of land had placed upon it for its service and improvement.
The facts speak eloquently for themselves in support of these conclusions. The tank must be regarded as a construction under the holding in Vaughn v. Kemp, supra. But as opposed to this theory, plaintiff has cited the case, inter alia, of Louisiana R. & Nav. Co. et al. v. Cash Grocery & Sales Co., Inc., La.App., 150 So. 57, in which the court held that railroad tracks placed upon land did not become immovables by nature. Examination of the cited case discloses the fact that the railroad tracks did not meet the requirements of the provisions of Articles 467 and 468, and it does not appear that any contention was made as to their status as a construction under Article 464. We observe, in passing, that similar questions with respect to railroad tracks were considered in Woodward v. American Exposition Railway Co., 39 La.Ann. 566, 2 So. 413; and Morgan's Louisiana & T. R. & S. S. Co. v. Himalaya Planting & Mfg. Co., 143 La. 460, 78 So. 735, 736.
In the Woodward case the court held, in effect, that a railroad construction on the land of another was a movable subject to pledge. But in the Morgan case the court determined that the construction of a railroad *100 "for the use and improvement" of a plantation gave it the status of an immovable.
The gas tank was attached to a pipeline system which furnished fuel to the buildings on the property, and, consequently, the conclusion is inescapable that this connection or attachment was for the "use or convenience" of the buildings. We do not think that the method of connection is of any considerable importance, and the fact that such connection was by means of a flexible copper pipe is no less significant than if such connection had been made by use of several rigid cast iron pipes, for example.
But it is zealously urged on behalf of plaintiff that the tank was not connected or attached to the building by the owner, under the requirements of Article 467, nor was it actually placed upon the land by the owner under the requirement of Article 468. We think this contention is without merit. We cannot construe the codal articles as being so narrow and circumscribing in intent and purpose as to require that an owner of realty himself physically perform the actual transportation, placing, fixing, attachment and connection of a structure or fixture in order to meet the codal provision. And, it is further to be observed that Article 468 does not require that the owner place a "thing" upon a tract of land, but, on the contrary, declares "things which the owner of a tract of land has placed upon it * * *." The use of the word "has" can only be interpreted in the sense of procurement or direction. In the instant case according to the testimony of plaintiff's witness Prather, quoted supra, the then owner of the property, Booras, directed and ordered the gas tank to be placed on the property.
Articles and things similar to the gas tank under consideration here have been declared immovables by our courts, e. g. a sprinkling system, Whitney Central Trust & Savings Bank v. United States Const. Co., 5 Cir., 250 F. 784; a water heater, Scott v. Brennan, 161 La. 1017, 109 So. 822, 48 A.L.R. 1143; a Delco light plant, Boykin v. Boykin, 4 La.App. 210; a pumping plant, Pan-American Life Insurance Co. v. Reynaud, 4 La.App. 290; and a gas system, Cottonport Bank v. Dunn, La.App., 21 So.2d 525.
We think it unnecessary to pursue the discussion of this question at any greater length since we are convinced that the gas tank, under the plain and undisputed facts of this case, should and must properly be regarded as an immovable under any one of the three codal articles discussed.
We observe that the judgment of the District Court in this case, while dismissing plaintiff's demands and all calls in warranty, was silent as to the writ of attachment which issued against Booras. While as a practical proposition the dismissal of this writ should be considered as consequent upon failure of plaintiff's suit, we, nonetheless, feel that this point should be covered in an appropriate judgment.
Accordingly, and for the reasons assigned, the judgment appealed from is amended to provide for the dissolution of the writ of attachment issued against property of A. A. Booras, and, as amended, the judgment is affirmed at the cost of plaintiff-appellant.