162 So.2d 160 (1964)
INDUSTRIAL OUTDOOR DISPLAYS
v.
J. Richard REUTER, Jr., et al.
No. 1278.
Court of Appeal of Louisiana, Fourth Circuit.
March 2, 1964.
Rehearing Denied April 6, 1964.
Writ Refused May 27, 1964.
*161 John J. Williams, Cobb & Wright, Herman M. Baginsky, New Orleans, for plaintiff-appellee.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for defendants-appellants.
Before SAMUEL, HALL and TURNER, JJ.
HALL, Judge.
Plaintiff, alleging ownership of two commercial advertising display signs or billboards together with the structure supporting same and the equipment and materials appertaining thereto located on the premises bearing the municipal numbers 139-141 South Broad Street in the City of New Orleans, brought suit against defendants who are the present co-owners of said premises, praying that the Court order and direct defendants to permit plaintiff to remove said signs, supporting structure, and equipment, and in the alternative that it have judgment against defendants for $1,200.00 being the alleged value thereof.
Defendants answered averring that the signs (which had been constructed on the property prior to their purchase of the realty) form part of the realty being immovables both by nature and by destination, and that title thereto passed to them by virtue of their purchase of the realty on the faith of the public records with no recorded notice of plaintiff's claim. Defendants *162 then reconvened, averring that plaintiff continued to lease the signs to third party advertisers after having been notified that the signs belonged to defendants, and prayed for judgment in reconvention in the sum of $120.00 as rental for said signs from date of such notification (January 1, 1962) through June 30, 1962 (the approximate time of the filing of their pleadings.)
Following trial on the merits, the District Judge, being of the opinion that the "H" beams supporting the signs had become immovable by destination; but being of the further opinion that the sign faces and the electrical and other equipment, "which can be unbolted and taken away without any effect on the real property," are still movables, rendered judgment in plaintiff's favor ordering defendants "to permit plaintiff to remove the sign faces, time clock and other movables, which may be unbolted and taken away without disturbing the real property or affecting the real property," and dismissed plaintiff's suit in all other respects. He also dismissed defendant's reconventional demand and decreed that each party should bear its own costs.
Defendants appealed. Plaintiff answered the appeal praying that the judgment be affirmed insofar as it orders defendants to permit the removal of the sign faces etc. but that it be amended so as to give effect to its alternative demand for $1,200.00 and also to provide that all costs should be borne by defendants.
Plaintiff is a partnership engaged in the business of erecting, maintaining and leasing outdoor display signs. On or about January 22, 1952 it entered into a written lease with Morris and Fowler, the then owners of the property bearing the municipal numbers 139-141 South Broad Street, whereby it leased the roof of the building for the purpose of erecting and maintaining thereon advertising displays, structures and equipment therefor. Availing itself of the privilege granted in the lease plaintiff constructed two signs on the property with its own materials and labor. The lease provided that all such signs, structures and equipment placed upon the leased premises should always remain plaintiff's personal property with the privilege of removal by it at any time. The lease was extended from time to time and was in effect on May 23, 1960 on which date defendants purchased from Morris and Fowler the real estate upon which the signs had been erected. The lease had never been recorded and the mortgage and conveyance certificates attached to defendants' act of purchase were clear of all prior alienations and encumbrances. There is testimony, however, to the effect that defendants had actual knowledge of the lease at the time of their purchase.
It is clear that under our laws of registry defendants are entitled to rely on the public records and are not bound or barred by unrecorded claims against the property, even though they may have had actual notice thereof gained dehors the public records. See LSA-C.C. Art. 2266; LSA-R.S. 9:2721; McDuffie v. Walker, 125 La. 152, 51 So. 100; Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392; Vaughn v. Kemp, 4 La. App. 682.
It is also clear that defendants by virtue of their purchase acquired clear title to the real estate together with all the buildings and all other immovables situated on the land free and clear of all unrecorded claims and equities. See Prevot v. Courtney, 241 La. 313, 129 So.2d 1.
If the signs, structures and other equipment still retained their character as movables after being erected on the property by plaintiff, the ownership thereof remained in plaintiff. This is so because plaintiff did not transfer title thereto to Morris and Fowler, and they in turn could not sell to defendants property they did not own.
On the other hand, if the signs etc. became immovables after their erection they became a part of the landed estate quo ad purchasers *163 of the land without recorded notice and title thereto passed to defendants by virtue of their purchase of the real estate whereon they are situated. See Louisiana Land & Pecan Co. v. Gulf Lumber Co., 134 La. 784, 64 So. 713. Vaughn v. Kemp, supra.
The principal questions presented by this appeal are therefore:
(1) whether the signs, structures and other equipment erected by plaintiff are movables or immovables, and
(2) whether, as found by the District Court, the "H" beams are immovable by destination but the sign faces, time clock and other portions of the structure remained movables because, as held by him, they are merely bolted to the "H" beams and can be removed and carried away without disturbing the real property.
The record reveals that the property in question is occupied by a small building set back from the street with an open shed in front extending from the building to the sidewalk, constructed in the manner of gasoline service stations. The shed is supported at its corners by large square columns and the floor is paved with concrete.
The signs erected by plaintiff are located over the shed portion of the roof. The signs are two in number and are supported by two large steel "H" beams which pass through the roof and are embedded in concrete in the ground for a depth of six to ten feet. One "H" beam is located near a column at the corner of the shed, while the other is located near the front wall of the building. At the point where the beams go through the roof they are surrounded by metal pitch pans which prevent leakage of the roof. Although the beams penetrate the roof, and probably touch it, they are in no manner structurally connected with the building at any point.
The two signs are connected back to back to the "H" beams above the level of the roof and face in opposite directions. Each sign is further braced by steel framing connected to the beams. There is a metal cat walk running along the bottom of each sign face.
The whole sign structure is an entity separate and apart from the building.
The testimony of plaintiff's witness, Finklestein, is to the effect that the sign faces are bolted to the "H" beams but he did not know whether they were not also welded to the beams. The testimony of plaintiff's witness, Brignac Jr., is to the effect that the signs were not only connected to the beams by nuts and bolts but that the "superstructure" is also welded to the beams.
The testimony of plaintiff's witnesses, Finklestein and Brignac Jr., is the only testimony in the record relative to the manner in which the signs are constructed.
The District Judge in his written "Reasons for Judgment" characterizes the "sign faces, the electrical equipment and time clocks" as property "which can be unbolted and taken away". He makes no mention of Brignac Jr.'s testimony that the "superstructure" is not only bolted but welded to the beams. We are informed by counsel that the District Judge personally inspected the premises before rendering judgment, but in his "Reasons for Judgment" he makes no mention of such an inspection and no mention of any personal observations relative to the sign construction. In this situation we are relegated to the record as made up on the trial.

(1)
Our Codal Articles divide things into movables and immovables, and divides immovables into two categories: (a) immovables by nature, and (b) immovables by destination.
Under the Codal Article dealing with immovables by destination (LSA-C.C. Art. 468) and the jurisprudence interpretative thereof it is quite clear that a movable does not become immobilized unless it is placed on or attached to the real estate by the owner thereof (or by his direction) for its service and improvement. Unless the *164 same person owns both the movable and the real estate upon which it is placed the movable does not become immovable by destination. See Richardson v. Item Co., Ltd., 172 La. 421, 134 So. 380; Buckley v. Lindsey Mercantile Co., Inc., 5 La.App. 467; Appel v. Ennis, La.App., 34 So.2d 415; Edwards v. S. & R. Gas Co., Inc., La.App., 73 So.2d 590.
Obviously in the case presented here the signs are not immovable by destination.
But are they not immovable by nature?
Article 464 of the Civil Code (LSA-C.C. Art. 464) provides:
"Art. 464. Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature." (Emphasis supplied).
Professor Yiannopoulos in an article in Volume 22 of the Louisiana Law Review has this to say: "Structures other than buildings, though grounded on the soil, are seldom regarded by our courts as immovable by nature under Article 464. Actually, Louisiana Courts either disregard this part of Article 464 or tend to apply a very narrow interpretation." (22 L.L.R. pp. 528-9)
While the aptness of Professor Yiannopoulos' remarks is readily confirmed by a study of the jurisprudence, we do not feel that we can ignore or disregard Article 464.
It is clear to us that the sign structure in the present case falls within the category of "other constructions" within the meaning of the article. It is certainly a "construction" and is firmly imbedded in the ground and is as permanent a construction as can be made of steel and concrete. It is already ten years old and is probably good for several decades more.
In our opinion the sign structure is an immovable by nature, and after a careful search of the jurisprudence we have found no decision which would tend to alter our views. The structure is either an immovable by nature or it is a movable. We cannot hold that it is the latter.

(2)
We are of the further opinion that the sign faces and other equipment forming the superstructure are component parts of one object, and if they are removed the object is destroyed or rendered useless. Since they are component parts of an immovable by nature they are likewise immovable even if merely fastened with bolts instead of being also welded to the "H" beams as the record indicates. The doors of a house are immovable because they are component parts thereof and ownership thereof passes to the purchaser of the land on which the house is located even though they may be removed by simply unscrewing the hinges.
For the foregoing reasons we hold that the ownership of the sign structure and all component parts thereof is vested in defendants by reason of their purchase of the land on which it is situated.
Defendants' reconventional demand must be denied for the reason that there is no testimony in the record showing that plaintiff ever leased the sign space to advertisers after receiving notice of defendants' claims or that it thereafter collected any rental for the space.
For the foregoing reasons that part of the judgment appealed from which orders the defendants to permit plaintiff to remove "the sign faces, time clock and other movables" is reversed, and plaintiff's suit is dismissed in its entirety, all costs in both Courts to be borne by plaintiff except the costs incurred in the lower court in connection with defendants' reconventional demand which latter costs are to be borne by defendants; in all other respects the judgment appealed from is affirmed.
Reversed in part and affirmed in part.