BOLIN, Judge.
From judgment in favor of Ballard’s, Inc. against Lloyd Lavern Evans for the principal sum of $1290.59 together with recognition of a materialman’s lien against property and improvements owned by the latter, Evans appeals.
We think the trial judge, in his reasons for judgment, accurately set forth the facts which we shall briefly restate, amplifying these findings where we deem necessary.
Evans owned a tract of land in Caddo Parish upon which was located his residence. On these premises Evans conducted a catering service which necessitated the use of quantities of ice. In order to store ice and to cool milk Evans secured a used, insulated truck body, without wheels, from a local dairy and placed it upon the ground next to his residence. It had no cement foundation but rested on the under-structure with several concrete blocks placed beneath it to make it level. After the truck body had remained in the yard of his residence for approximately one year, Evans contacted an official of Ballard’s regarding the purchase of a York ice machine. One of Ballard’s salesmen told Evans his company did not sell directly to retail customers but only to dealers who would contract to install the machine. Ballard’s representative further told Evans he would contact a dealer-contractor and have him call on Evans about installing the ice maker.
Subsequently the salesman contacted Jack Ryan, who approached Evans concerning purchase and installation of the ice maker on the insulated truck body. There is a dispute as to whether Evans purchased the machine from Ballard’s, with Ryan acting as an agent, or whether Ryan and Evans contracted with one another for the installation of the machine. The trial judge adopted the latter position and held the parties entered into a contract rather than a purchase agreement. We think the evidence supports his conclusion.
After the ice maker was installed Evans paid Ryan $2,000 for the machine and cost of installation. Ballard’s billed Ryan for $1290.59, the price of the machine, and Ryan gave a check for the stated amount to Ballard’s in payment of the purchase price. The bank refused to honor payment on Ryan’s check because of insufficient funds in his account. Ballard’s filed a lien against Evans’ property for the purchase price of the machine and instituted the present suit.
Evans contends the judgment of the lower court in favor of Ballard’s is erroneous for four reasons:
(1) The furnisher of machinery must perform some work in order to obtain a lien.
(2) Neither the truck body nor the ice-making machine which was mounted on the top thereof was an immovable.
(3) Plaintiff failed to prove Evans was the owner of the truck body.
(4) Ballard’s is estopped to assert its claim.
In order to dispose of the first contention we deem it necessary to set forth the pertinent portion of Louisiana Revised Statute 9:4801 under which Ballard’s asserts its claim:
“A. Every contractor, sub-contractor, architect, engineer, master-mechanic, mechanic, cartman, truck-man, workman, laborer or fur-nisher of material, machinery or fixtures, exclusive of anyone who rents or leases movable property, who performs work or furnishes material for the erection, construction, repair or im *559 provement of immovable property, or who furnishes material or supplies for use in machines used in or in connection with the erection, construction, repair or improvement of any building, structure or other immovable property, with the consent or at the request of the owner thereof, or his authorized agent or representative, or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work or labor performed, or the materials, machinery or fixtures furnished, and for the cost of recording such privilege, upon the land and improvements on which the work or labor has been done, or the materials, machinery or fixtures furnished.” (Emphasis added)
Although the quoted statute contemplates that the material or machinery furnished be incorporated into or attached to the immovable, it does not require the furnisher of material or machinery to perform the work. (The labor necessary to attach or install the material may be performed by the owner or by another with his consent.) Thus, the case cited by appellant, National Surety Corporation v. Highland Park Country Club, Inc., 240 La. 747, 125 So.2d 151 (1961), involving a lessor of machinery, is inapplicable to the instant case particularly in view of the 1960 amendment excluding lessors of movables from the benefits of the statute.
The trial judge found the insulated truck body became a building and an immovable “by virtue of its use and by virtue of the fact it just is a building as it sits on the ground.” The ice machine was attached on top of the truck body by means of bolts fastened to angle irons, which in turn were welded to the truck body. To install the machine it was necessary to cut a hole in the top of the ice house through which a piece of sheet metal was run to connect the machine with the storage interior. Through this hole ice from the machine was discharged automatically into the storage area. Separate water and electrical connections serviced the machine. Although the trial judge held the ice maker had become immovable by destination, we think the statute granting the privilege requires only that the material or machinery furnished be for the repair or improvement of an immovable. Therefore, the ultimate issue is whether the truck body, to which the ice maker was attached, was an immovable.
We direct our attention to this question and the appropriate articles of Louisiana Civil Code:
Art. 464:
“Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.”
******
“Art. 468:
“Things which the owner of a tract of land has placed upon it for its service and improvement are immovable by destination.
“Thus the following things are immovable by destination when they have been placed by the owner for the service and improvement of a tract of land, to wit:
Cattle intended for cultivation.
Implements of husbandry.
Seeds, plants, fodder, and manure.
Pigeons in a pigeon house.
Beehives.
Mills, kettles, alembics, vats, and other machinery made use of in carrying on the plantation works.
The utensils necessary for working cotton, and sawmills, taffia distilleries, *560 sugar refineries and other manufactures.
All such movables as the owner has attached permanently to the tenement or to the building, are likewise immovable by destination.”
Appellant contends the lower court erred in holding the truck was an immovable by destination while appellee urges the truck body became an immovable by nature and also by destination. We shall consider these contentions in reverse order for reasons which will later appear from our review of the decisions of the courts in previous cases. The first paragraph of article 468 provides things which the owner of a tract of land has placed upon it for its service and improvement are immovables by destination. It is contended, since Mr. Evans is in the industrial catering business which he operates on the premises where he lives and where the ice house is located, that the ice house was placed there by the owner for the service of his business and became immovable by destination. In support of this interpretation we are cited to the case of Straus v. City of New Orleans, 166 La. 1035, 118 So. 125 (1928). There the court held the phrase “tract of land” encompassed more than land and included buildings, and that machinery placed in a cotton mill became an immovable by (industrial) destination. It was likewise held in Chestnut v. Hammatt, 157 So.2d 915 (La.App. 1 Cir. 1963) that a milk tank and a vacuum pump in a dairy was immovable by industrial destination, as was a dough mixer in a bakery in Breaux v. Ganucheau (La.App. 1 Cir. 1925), 3 La.App. 481.
There is an excellent review of the prior jurisprudence regarding immovables in Lafleur v. Foret (La.App. 3 Cir. 1968), 213 So.2d 141, wherein it was held window air-conditioning units attached to a residence were not immovable by destination. The court had this to say:
“The apparent anomaly of allowing immobilization of movables servicing buildings when Art. 468 refers to “tracts of land” is explained by reference to the French text of the article in the code of 1825. There, the word “fonds” corresponds to “tract of land.” Fonds, with no English synonym, refers to landed property and can encompass more than tracts of land. This expanded meaning has been accepted since the French text of that article is authoritative and shows the true intent of the drafters.
“Our prior jurisprudential applications leave open whether commercial (non-industrial, non-manufacturing business establishments) and residential destinations are included under Art. 468 — that is, whether movables which the owner places in service of a residence or a commercial building can become immov-ables, as in the case of agricultural and industrial destinations.
“Though the exact question was not discussed, cases have indicated that these destinations are not allowed while others have indicated otherwise.
“Of course, the facts of this case do not concern a- commercial destination, but rather a residential destination of the air conditioners. But, it may be pointed out that both commercial and residential destinations are permitted under an expansive interpretation of corresponding articles of the French Civil Code. Without expressing an opinion as to commercial destinations, a question involving considerably different policy considerations and different implications of the code articles and the cases, we hold that immobilization by destination by a relationship of service as provided by Art. 468 does not extend to movables placed in a relationship of service to a residence.
“It is apparent that the literal language of Art. 468 does not extend to residences. Movables associated with farming operations and industry are all that are mentioned.” (See footnotes 6, 7, 8, 9, and 10; Yiannopoulos, Sec. 52 at page 154; also 30 La.Law Review 185.)
*561 The question of whether a truck body, placed on the premises for the service of a commercial enterprise but unattached to the building which housed the catering business, can become an immovable by destination appears to be res nova. We prefer to predicate our decision on our conclusion that the structure satisfies the definition of an immovable by nature as found in Louisiana Civil Code Article 464. The reason we have chosen to discuss the possible applicability of Civil Code Article 468 to the facts of this case is because of the rather broad language found in a number of Louisiana decisions classifying objects as immovables both by nature and destination.
We have been cited to the following cases dealing with buildings or structures which have been held to be immovable by nature.
In Holicer Gas Co. v. Wilson (La.App. 2 Cir. 1959), 45 So.2d 96, a 2,000-pound butane tank was set on concrete blocks and attached to the residence by means of pipes. The court held the tank became immovable by nature. However, in a subsequent case on nearly identical facts, Edwards v. S. & R. Gas Co. (La.App. 2 Cir. 1954), 73 So.2d 590, the court reversed its position, holding that ownership of both the movable (gas tank) and immovable (the land) must be vested in one and the same person. The question involved in the above cases has been resolved by an act of the Legislature, La.Acts 1954, No. 49, La. R.S. 9:1106, providing that all tanks placed on rural or urban property by one other than the owner of the land for the storage of liquefied gas or liquefied fertilizer shall remain movable and shall not be affected by a sale of the land.
In Industrial Outdoor Displays v. Reuter (La.App. 4 Cir. 1964), 162 So.2d 160, it was held an outdoor advertising sign placed on land and consisting of two large steel “H” beams which were imbedded in concrete in the ground was an immovable by nature, and the sign faces and other equipment forming the superstructure were component parts of one object and were likewise immovable even if merely fastened with bolts instead of being welded to the “H” beams.
In Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961) the court held a tractor shed and a chicken house were immovable by nature.
In the Lafleur case, discussed supra, there was also involved a dispute concerning two brooder sheds and three small doghouses. One of the brooder sheds was 25 feet long, 5 feet high and 4 feet deep and was used as a brooder for beagle puppies. The other was 10 feet long but had otherwise similar dimensions and was used as a chicken brooder. Both sheds rested on the ground; they could be moved, but it would take more than two men to pick them up. During the course of the opinion, affirming the decision of the lower court, the court made the following pertinent observations:
“The determination of whether these sheds and doghouses are movable or immovable depends upon the application of Civ.Code Article 464, which provides: ‘Lands and buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.’
* * * * * *
“We pretermit whether these structures are, technically, ‘buildings’ instead of ‘other structures’ under Art. 464. We think that, in either event, the test of immobilization must be whether, interpreted by objective manifestations, the outbuilding can be considered as intended to be permanently affixed to the soil.
“Taking into consideration both the permanence (or not) of the placement or attachment of the outbuildings and also their actual physical mobility (or not), the trial court concluded that, under contemporary social attitudes, an objective observer could conclude that the larger *562 structures, the two sheds, were intended by the owner to become permanently part of the premises, while the smaller and more mobile doghouses were not. The court accordingly classified the former as immovables by nature which (in the absence of contrary contractual provision) were conveyed to the purchaser with the sale of the soil; the latter as movables to which the seller retained title.”
(See Cases cited in footnotes 22 and 23; also Yiannapoulos, Sections 46-49.
In the case before us the record reflects the structure (truck body) was approximately 7 feet high, 12 feet long and 6 feet wide. It was the testimony of Evans that two men could not lift it. It was placed on the land at the owner’s direction, with the apparent intention that it would become permanently part of the premises and had been used for more than two years as a building (ice house) in defendant’s catering business. Based on Civil Code Article 464 and the jurisprudence, particularly the Lafleur case, we conclude the insulated truck body was immovable by nature.
In view of our conclusion, it is perhaps unnecessary to pass on Evans’ claim that he was not the owner of the truck body. Suffice it to say the record is convincing he had secured the property from a Shreveport dairy and had been exercising all the acts of ownership over the property for at least one year before he had the ice maker installed. There was no evidence the former owner or anyone else had asserted any adverse claim of ownership to the property.
The defense of estoppel is based on defendant’s contention Jack Ryan was the agent of Ballard’s and, as a consequence, that Ballard’s is responsible for whatever representations or transactions Ryan made with defendant, including collection of the purchase price of the machine. The district judge found Ryan was an independent contractor rather than an agent of Ballard’s, and with this conclusion we agree. Evans has not proved he relied to his detriment on any act done by Ballard’s, or by any agent of Ballard’s, which would create an estoppel.
Judgment is affirmed at appellant’s cost.