393 So.2d 117 (1980)
P. H. A. C. SERVICES, INC.
v.
SEAWAYS INTERNATIONAL, INC., Pennzoil Company and Pennzoil Producing Company.
ACOUSTICAL SPRAY INSULATORS, INC.
v.
PENNZOIL COMPANY et al.
Nos. 13245, 13246.
Court of Appeal of Louisiana, First Circuit.
November 10, 1980.
Rehearing Denied January 26, 1981.
*118 Silas B. Cooper, Jr., Abbeville, for plaintiff.
John W. Hutchison, Lafayette, for Pennzoil Co. and Pennzoil Producing Co.
*119 Duncan M. Smith, Jr., Lafayette, for Seaways Intern.
Michael J. McNulty, Jr., Franklin, for plaintiff.
Donald G. Cave, Baton Rouge, for Acoustical Spray Insulators.
Amos H. Davis, Lafayette, for defendants.
Before EDWARDS, LEAR and WATKINS, JJ.
WATKINS, Judge.
These two consolidated cases arose out of the construction of a three story living quarters unit (unit) for an offshore drilling platform. Defendant-appellant, Pennzoil Company and Pennzoil Producing Company (Pennzoil), entered into a contract with defendant, Seaways International, Inc. (Seaways) for the construction of this unit.[1] Plaintiffs-appellees, P.H.A.C. Services, Inc. (PHAC) and Acoustical Spray Insulators, Inc. (Acoustical) subcontracted with Seaways to provide certain labor, materials and supplies in connection with the construction of the unit. PHAC, pursuant to its subcontract, provided labor and materials for the installation of plumbing, heating and air conditioning which was incorporated into the unit. Acoustical, pursuant to its subcontract, provided labor and materials for the installation of acoustical material in and on the said unit. Both PHAC and Acoustical submitted invoices and demands for payment to Seaways and neither was paid. Seaways was apparently not able to pay plaintiffs, for financial reasons. Subsequent to the default in payment by Seaways, both of the plaintiffs-appellees filed lien affidavits in the public records of St. Mary Parish. At the time the lien affidavits were filed the unit was located in St. Mary Parish where it remained until some time after these suits were filed. Pennzoil subsequently moved the unit which it owned to an offshore drilling platform located in the Gulf of Mexico off the Coast of Texas.
Appellant, Pennzoil, filed exceptions of no cause and no right of action, and an exception of lack of jurisdiction over the subject matter, which latter exception was filed after the trial court ruled on the first two exceptions. After hearing on the exceptions of no cause and no right of action, the trial court ruled that plaintiffs-appellees had no cause of action under LSA-R.S. 9:4801 et seq., and LSA-R.S. 9:4502 et seq., but found that the appellees did allege a cause of action under LSA-R.S. 9:4861 et seq. The effect of the trial court's ruling that appellees' petitions stated a cause of action, was to overrule or dismiss the exceptions of no cause and no right of action in their entirety. See P.H.A.C. Services, Inc. v. Seaways International, Inc., et al., 393 So.2d 115 (La.App. 1st Cir. 1980) and Acoustical Spray Insulators v. Pennzoil Company et al., 393 So.2d 117 (La.App. 1st Cir. 1980).
After trial on the merits the court rendered judgment in favor of appellees and against Seaways and Pennzoil for the amounts claimed, and recognized liens against the unit in favor of appellees under LSA-R.S. 9:4861 et seq., and awarded plaintiffs attorneys fees. Pennzoil appealed. Seaways did not appeal. Acoustical did not appeal, nor did it answer the appeal. PHAC answered the appeal seeking a money judgment against Pennzoil, which it was awarded by the lower court, and seeking recognition of a lien against the unit under LSA-R.S. 9:4801 et seq. and/or LSA-R.S. 9:4502 et seq.

LSA-R.S. 9:4861
The trial court held that under R.S. 9:4861 plaintiffs have a privilege on the unit in the construction of which plaintiffs had furnished labor and supplies. The trial court reasoned that since the statute imposes a privilege on "structures" and "appurtenances", and the unit fits within the definitions of structures and appurtenances, that a privilege on the unit does in fact exist under R.S. 9:4861.
*120 The critical question in this aspect of the case is not what items of property are burdened with the privilege, but rather was the labor and supplies furnished by plaintiffs the kind for which the subject statute entitles plaintiffs to a privilege. The latter portion of the statute to which the trial court refers beginning "Any person who does any trucking, towing ...", in setting forth the various items that when furnished entitled the person furnishing them to a privilege, does not include specifically "structures" or "appurtenances". These two specific words are only used in the portion of the statute declaring the types of property to which the privileges attach. The trial court's reasoning, therefore, does not support its conclusion.
That portion of R.S. 9:4861 which describes the various types of property on which the privilege is granted provides that there is a privilege on "... the lease whereon the same are located...." This language is indicative of the legislative intent to limit the privilege to those situations where the drilling or operations are identified with a particular lease or leases. This construction is supported by the provisions of R.S. 9:4862 which section sets forth the requirements for filing the Notice of the privilege and declares that the notice must be filed within ninety days, "... from the last date of the delivery of such fuel, drilling rigs, ... equipment, material or supplies to the well or wells ..." (emphasis ours).
A further indication of the legislative intent to limit the privilege granted in R.S. 9:4861 to those situations where the drilling or operations are identified with a particular lease or leases is the fact that the various types of property on which the privilege is imposed are listed in the conjunctive and the listing in both instances begins with the "... oil or gas produced from the well or wells, and the proceeds thereof inuring to the working interest therein, and on the oil, gas or water well or wells and the lease whereon the same are located...." If it was the legislative intent to grant the privilege to furnishers of labor, materials and supplies in the construction of an essential part of an offshore drilling platform not yet connected with the drilling or operations of any particular well or wells on a particular lease or leases, we believe the legislature would have listed the various types of property disjunctively, thereby indicating its intent to grant the privilege even if the drilling rig or platform was not at the time of the furnishing located on a particular lease or leases for the purpose of drilling a well or wells.
The Continental Casualty cases (Continental Casualty Company v. Associated Pipe and Supply Company, 310 F.Supp. 1207 (E.D.La.1969), 447 F.2d 1041 (C.A. 5th Cir. 1971), while not binding on us, differ significantly in that the gas gathering pipeline served particular wells located on certain particular leases.
For the foregoing reasons we are compelled to find that no lien or privilege was created under the provisions of R.S. 9:4861 et seq. in favor of PHAC and Acoustical.

LSA-R.S. 9:4801
We now must consider whether a lien was created in favor of PHAC and Acoustical under the provisions of R.S. 9:4801 et seq.

LSA-R.S. 9:4801 provides, in part:
"A. Every contractor, subcontractor, architect, engineer, registered land surveyor, master mechanic, mechanic, cartman, truckman, workman, laborer, or furnisher of material, machinery, or fixtures, exclusive of anyone who rents or leases movable property whose rights shall be governed by the provisions of R.S. 9:4891.1, who performs work or furnishes material for the erection, construction, repair, or improvement of immovable property, or who furnishes oil, gas, electricity, or other materials or supplies for use in machines used in or in connection with the erection, construction, repair, or improvement of any building, structure, or other immovable property, with the consent or at the request of the owner *121 thereof, or his authorized agent or representative or of any person with whom the owner has contracted for such work, has a privilege for the payment in principal and interest of such work or labor performed, or the materials, machinery or fixtures furnished, and for the cost of recording such privilege, upon the land and improvements on which the work or labor has been done, or the materials, machinery, or fixtures furnished."
PHAC and Acoustical contend that they are entitled to a privilege on the unit under the provisions of LSA-R.S. 9:4801 et seq. These appellees did properly and timely file affidavits of their claims as the law requires.
In order for the privilege created by the quoted statute to apply, the unit on which appellees performed labor and furnished materials must be an immovable. The trial court found the said unit not to be an immovable, holding that it was not a building but an "other construction" under LSA-C.C. art. 464 (prior to its amendment by Act 728 of 1978), and therefore not subject to the privilege. We do not agree, as we believe that the unit was a building and an immovable under the law of this State.
The following articles of the Civil Code are pertinent:
"Article 462. Tracts of land
Tracts of land, with their component parts, are immovables.
"Article 462. Component parts of tracts of land
Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees, are component parts of a tract of land when they belong to the owner of the ground.
"Article 464. Buildings and standing timber as separate immovables
Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground."
Although the quoted articles were amended by Act 728 of 1978 effective January 1, 1979, the official Comments declare that the amendments to these articles did not change the law.
The trial court found the unit to be an "other construction" as distinguished from a building for the reason that "... the structure is not being used as a building; rather it was set upon wooden blocks while it was under construction." In so finding the court applied the three criteria set forth in Telerent Leasing Corp. v. R & P Motels, Inc., 343 So.2d 267 (La.App. 1st Cir. 1977), in determining whether any object is an other construction, that is, (1) the size of the structure, (2) some degree of integration or attachment to the soil, and (3) some degree of permanency. Concluding that there was "no degree of attachment and/or integration to the soil" nor any intent of the parties that the unit be permanently situated on the land where it was constructed, the trial court found the unit was not an immovable. While the application of these criteria may be valid in determining whether or not certain very diverse kinds of things[2] are "other constructions", their application to the issue of whether the unit is a building under the law is clearly invalid. Telerant is factually inopposite as the court in that case was called upon to determine whether a music, alarm and public address system installed in each room of a motel was an immovable.
*122 Article 464 of the Civil Code provides expressly that buildings as a class of property are immovables. The official Comments relative to Article 464 explain further as follows:
"(d) Constructions permanently attached to the ground, other than buildings, are component parts of a track of land when they belong to the owner of the ground. Article 463, supra. They are movables when they belong to another person. Article 464, following Louisiana legislation and jurisprudence, declares that only buildings and standing timber may be separate immovables."
Prior to its revision by Act 728 of 1978, Article 464 of the Civil Code read as follows:
"Lands and buildings or other construction, whether they have their foundations in the soil or not, are immovable by their nature."
Although the text of this article was changed by the enactment of Act 728, the official Comments declare that the amendments were not intended to change the law. It follows, therefore, that a building is an immovable and it is not required to have its foundation in the soil.
The final question then, is whether the unit is a building within the meaning of Article 464 of the Civil Code. The definition of what is a building qualifying as an immovable under Article 464 has not been expressed clearly in the law or jurisprudence. The determination of what is a building must, therefore, be made by the courts according to prevailing notions in society.[3]
The unit on which PHAC and Acoustical performed labor and furnished materials is a large permanent steel structure, three stories in height, designed and constructed as the living quarters for the persons who work on a fixed drilling platform in offshore waters. The unit is to be used as a dwelling. Clearly within prevailing notions of contemporary society such a structure must be classified as a building. In Olsen v. Shell Oil Co., 365 So.2d 1285 (1979), the Supreme Court in its determination of whether a fixed drilling platform is a building within the meaning of Article 2322 of the Civil Code said:
"The word `building' in Article 2322 is translated from the word `batiment' in its corresponding article of the French Civil Code, Article 1386. `Batiment' is defined in Bescherelle's Dictionnaire National (1844) as `a generic term designating all edifices public or private, regardless of the type material composing them, but most particularly those which serve as habitations.' (The writer's translation.) Traditionally, French jurisprudence has interpreted the word `batiment' broadly; according to an authoritative French treatise, numerous French authors consider it to include all works of man, synonymous with the word `construction' (including structures both movable and immovable, whether temporary or permanent).6 The treatise would more narrowly define the word, at least limiting it to immovables, and the tendency of modern French jurisprudence has been so to interpret the word more narrowly.7
"Louisiana Civil Code Article 464 (1870) provides that `buildings or other constructions, whether they have their foundations in the soil or not, are immovable by their nature.' See also Civil Code Articles 463 and 464, as reenacted in 1978. In the context of the Louisiana Civil Code, a `building' is a type of permanent construction that would be classified as an immovable." (365 So.2d 1285, 1290, 1291) (emphasis ours)
Similarly the word "buildings" in Article 464 is translated from the word "batiments" in its corresponding article of the French Civil Code, Article 518. The French definition particularly applies to structures which serve as habitations.
*123 Pennzoil contends that the unit cannot be an immovable because the construction yard in St. Mary Parish on which it was erected was not its permanent location, and because the unit was resting on wooden blocks with no integration with the soil. As stated above, the law does not require that a building have its foundation in the soil. In answer to the contention that in effect the unit does not become a building and, hence, an immovable until it is located on a more permanent site, we find no support in law or in logic for this view, and to adopt it would require us to find that the unit is now a movable contrary to the express provisions of Article 464. The fact that the unit was constructed on one site for ultimate delivery to a more permanent site is not a determinative factor in the consideration of whether the unit is a building. In Holicer Gas Co. v. Wilson, 45 So.2d 96 (La. App. 2d Cir. 1950), the Court said:
"Nor are we disposed to accord great weight to plaintiff's contention that the gas tank occupies the status of a movable because it was manufactured or fabricated before being placed upon the property. We have been able to find nothing in the law or jurisprudence of this State which requires buildings or constructions to be actually built or constructed upon the land in order to be classed as immovable. Such a conclusion would be utterly unjustified, and, in these days of prefabrication, would lead to absurd consequences entirely incompatible with the obvious intent of the codal provisions." (45 So.2d 96, 99)
For the foregoing reasons, we hold that PHAC and Acoustical are each entitled to a privilege on the unit under the provisions of LSA-R.S. 9:4801 et seq., and their privileges are hereby recognized.
The contract for the construction of the unit between Pennzoil, as owner, and Seaways, as general contractor, was not recorded, as a result of which R.S. 9:4812 is applicable. Both PHAC and Acoustical timely filed lien affidavits asserting their claims against the owner, Pennzoil, in accordance with the provisions of Section 4812, the effect of which filing not only preserved their privileges but created in their favor a personal cause of action against Pennzoil, as the section in pertinent part provides:
"Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal cause of action against the owner for the amount of his claim for a period of one year from the aforesaid recordation of his claim, which cause of action shall prescribe one year after the date of said recordation. This shall not interfere with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent."
The lower court awarded PHAC and Acoustical attorneys fees as provided by LSA-R.S. 9:4861. Since we have found that no lien was created under this statute, and since LSA-R.S. 9:4812 which is applicable does not authorize the granting of attorneys fees, we will reverse the award of attorneys fees.

Jurisdiction Over Subject Matter
Appellant, Pennzoil, filed a declinatory exception of lack of jurisdiction over the subject matter, contending that, since the unit was located at the time of the filing of the exception off the coast of Texas, the Court lacked subject matter jurisdiction over these proceedings. The unit was located in St. Mary Parish within the geographical jurisdiction of the Court at the time of the filing of the lien affidavits and these two lawsuits. Other than Piper v. Olinde Hardware & Supply Company, Inc., 288 So.2d 626 (La.1974), which is clearly not applicable, Pennzoil cites no law or jurisprudence in support of its exception. There is no question of the court's jurisdiction over the persons (the parties to these proceedings), and since the unit (res) was located in St. Mary Parish when the lien affidavits were filed and still there when suits seeking to have the liens and privileges recognized *124 were filed, there can be no question of the court's jurisdiction over the subject matter. It is well established as a general rule that, where the jurisdiction of the person or of the res has once attached, it is not defeated by the removal of the person or the res beyond the jurisdiction of the court. 21 C.J.S. Courts § 93; Wilmot v. Wilmot, 223 La. 221, 65 So.2d 321 (1953); DeFatta v. DeFatta, 352 So.2d 287 (La.App. 2d Cir. 1977).

Decree
The trial court rendered separate judgments in each of these two consolidated cases, but there was an inconsistency in that in Docket No. 13,245 the judgment in favor of PHAC was against Seaways and Pennzoil "jointly, severally and in solido", but in Docket No. 13,246 the judgment in favor of Acoustical was rendered against Seaways and Pennzoil jointly. We believe that in both cases Seaways and Pennzoil are solidarily liable, however, since Acoustical did not appeal or answer the appeal, we can give no relief beyond that granted in the judgment of the trial court.
In regard to Docket No. 13,245, the judgment of the trial court is affirmed insofar as it awarded judgment in favor of PHAC and against Seaways and Pennzoil jointly, severally and in solido, plus legal interest from date of judicial demand, and all costs and reversed insofar as it recognized a lien in favor of PHAC under LSA-R.S. 9:4861 et seq., and insofar as it awarded PHAC attorney fees. Judgment is rendered herein recognizing a lien on the living quarters unit under LSA-R.S. 9:4801 et seq. in favor of PHAC.
In regard to Docket No. 13,246, the judgment of the trial court is affirmed insofar as it awarded judgment in favor of Acoustical and against Seaways and Pennzoil, plus legal interest from date of judicial demand, and all costs, and reversed insofar as it recognized a lien in favor of Acoustical under LSA-R.S. 9:4861 et seq., and insofar as it awarded Acoustical attorneys fees. Judgment is rendered herein recognizing a lien on the living quarters unit under LSA-R.S. 9:4801 et seq. in favor of Acoustical.
All costs of both appeals are assessed against the appellant, Pennzoil.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
LEAR, Judge, dissenting.
In order for the privilege created by LSA-R.S. 9:4801 to apply, the unit in question must be an immovable. Louisiana Civil Code articles 463 and 464 provide as follows:
"Art. 463. Component parts of tracts of land
"Buildings, other constructions permanently attached to the ground, standing timber, and unharvested crops or ungathered fruits of trees, are component parts of a tract of land when they belong to the owner of the ground.
"Art. 464. Buildings and standing timber as separate immovables
"Buildings and standing timber are separate immovables when they belong to a person other than the owner of the ground."
In Jones v. Conrad, 154 La. 860, 98 So. 397 (1924), the Louisiana Supreme Court held that a drilling rig did not become an "immovable" under C.C. art. 464 because it was placed on the land for a temporary purpose.
The unit in question was being built on land for practical purposes of construction and was subsequently towed into the Gulf of Mexico.
It must be kept in mind that a statute creating a lien must be strictly construed and cannot be extended or enlarged by implication or through equitable considerations. McCulley v. Dublin Const. Co., 234 So.2d 257 (La.App. 4th Cir. 1970), writs refused 256 La. 375, 236 So.2d 503 (1970).
In the instant case, the unit being constructed was never meant to be permanent and was not attached to the soil. I, therefore, find it extremely difficult to view this unit as an immovable.
*125 I agree with the majority that no lien or privilege exists under LSA-R.S. 9:4861 et seq. and concur in their reversal of the judgment of the trial court insofar as it recognized a lien in favor of P.H.A.C. and Acoustical under R.S. 9:4861 et seq. and insofar as it awarded attorney fees.
I agree with the trial court that no lien or privilege exists under LSA-R.S. 9:4502 et seq.
I respectfully dissent.
NOTES
[1] The contract was not recorded. Seaways constructed the unit on premises it had leased in St. Mary Parish, Louisiana, from a third party not involved in this litigation.
[2] Barbed wire fence, Bailey v. Kruithoff, 280 So.2d 262 (La.App. 2d Cir. 1973), "... railroad trackage, American Cresote Company v. Springer, 257 La. 116, 241 So.2d 510 (1970); a tractor shed and poultry house, Prevot v. Courtney, 241 La. 313, 129 So.2d 1 (1961); a canal, Albert Hanson Lumber Co. v. Board of State Affairs et al., 154 La. 988, 98 So. 552 (1923); a brooder for beagle puppies 25 × 5 × 4 feet and a chicken brooder 10 × 5 × 4 feet, each set on 4 × 4 inch posts in the ground, Lafleur v. Foret, 213 So.2d 141 (La.App. 3d Cir. 1968); an outdoor advertising sign, Industrial Outdoor Displays v. Reuter, 162 So.2d 160 (La. App. 4th Cir. 1964); a brick pit, Folse v. Loreauville Sugar Factory, 156 So. 667 (La.App. 1st Cir. 1934); and a gas tank, Monroe Automobile Co. v. Cole, 6 La.App. 337 (2d Cir. 1927)." (at page 264)
[3] See Ellis v. Dillon. 345 So.2d 1241 (La.App. 1st Cir. 1977); Benoit v. Acadia Fuel & Oil Distributors, Inc., 315 So.2d 842 (La.App. 3rd Cir. 1975), writ refused La., 320 So.2d 550 (1975); Bailey v. Kruithoff, 280 So.2d 262 (La. App. 2nd Cir. 1973), and Yiannopoulos, Louisiana Civil Law Treaties, Vol. 2, Sec. 45.